[No. 25877. Department One. May 19, 1936.]

JULIA M. PARKS, *as Administratrix, Respondent*, v. STERLING BOX MACHINE COMPANY *et al.,* *Appellants.*[1]

*Trefethen & Porterfield,* for appellants.
*C. A. Schneider,* for respondent.

GERAGHTY, J.—This action was brought by the plaintiff, as administratrix of the estate of her deceased husband, Glen Parks, to enjoin the defendant Automatic Box Machine Company from claiming any right or interest under a certain contract executed by her husband with one Nelson, under the terms of which Nelson was to have the exclusive right and license to manufacture and sell a device which had theretofore been patented by Parks; Nelson's rights under the contract having, by mesne assignments, passed to the

[1]Reported in 57 P. (2d) 1032.

defendant. A copy of the contract is attached to the complaint as an exhibit.

The defendant, in its answer, denied a breach of the contract entitling plaintiff to the relief prayed for, and, by way of an affirmative defense and cross-complaint, alleged that Parks breached certain promises made by him in relation to the patented device and the cost of producing it, by reason of which the defendant was required to spend several thousands of dollars. It prayed judgment against the plaintiff for the money so spent, as well as for damages in loss of anticipated profits.

The court denied the injunction asked by the plaintiff, granted her a judgment for nine hundred dollars for breach by the defendant of certain stipulations of the contract, and denied the defendant any relief under the cross-complaint. The defendant appeals.

The facts necessary to an understanding of the issues are: Parks held a patent for a box-making machine and, on October 26, 1929, entered into an agreement with J. B. Nelson, by the terms of which Nelson was given the exclusive right to manufacture, distribute and sell the machinery covered by the patent. Nelson agreed to finance the building of the first box-making machine, which was to be completed according to the plans of the inventor within six months from the date of the agreement, and agreed to pay Parks one thousand dollars in cash upon the sale to, and acceptance by, a purchaser of the second machine made, and an agreed percentage of the net sale price of the machines sold thereafter. The licensee, Nelson, also agreed to produce and sell, lease or otherwise dispose of not less than ten box-making machines during the first year after completion of the first machine.

In paragraph V of the agreement, the licensee agreed to put forth his best efforts to finance and man-

ufacture the machinery and to dispose of the same, with the proviso that, since no box-making machine had been completed by the inventor, and the licensee was acting on the statements of the inventor as to usefulness, practicability, and value, it was understood and agreed that the licensee should be under no obligation to produce, sell, lease, or otherwise dispose of the number of machines mentioned in paragraph IV, or any machine at all, if, in the opinion of the licensee, the usefulness, practicability, and value of the machine were not such as to make it a salable article, and at the option of the licensee, he might then surrender the agreement, and upon doing so, all obligation of the licensee was to cease and determine.

The contract provided that the licensee should have the right to organize a corporation for the manufacture of the box-making machine, to which the licensee's rights would be assigned.

Following the execution of the agreement, the Sterling Box Machine Company was organized and took over the rights of Nelson, under the agreement. This corporation later conveyed all its interest in the contract to F. M. McGrath, whose name appears upon the contract as a witness to its execution. Later, McGrath organized the Automatic Box Machine Company, to which he transferred his interest in the contract. McGrath was the principal stockholder and president of the second corporation, as he had been one of the organizers and president of the Sterling Box Machine Company. The Sterling Box Machine Company, at the time of the trial, had practically gone out of existence and had paid no corporate license fee for several years, so that the Automatic Box Machine Company is solely interested in the action and is referred to as if sole appellant.

At the trial, the appellant attempted to prove

by the testimony of McGrath, its president, organizer, and principal stockholder and a witness to the original contract, that, at the time the contract was entered into, Parks made several representations as to the use, practicability and cost of construction of the box-making machine covered by the patent and in a sense interpreted some provisions of the contract. This testimony, on the objection of the respondent, was excluded by the court, on the ground that it was inadmissible under Rem. Rev. Stat., § 1211 [P. C. § 7722], which provides that,

" . . . in an action or proceeding where the adverse party sues or defends as executor, administrator or legal representative of any deceased person, or as deriving right or title by, through or from any deceased person, . . . then a party in interest or to the record, shall not be admitted to testify in his own behalf as to any transaction had by him with, or any statement made to him, or in his presence, by any such deceased . . . person, . . ."

The exclusion of this testimony is assigned as error. The testimony was properly excluded, as McGrath was a party in interest.

"In this court the appellant makes two principal contentions: first, that much of the evidence introduced on behalf of the respondent was inadmissible, and that, with this eliminated, there is not sufficient evidence remaining to show a modification of the written agreement; and second, that the evidence fails to show a consideration sufficient to support the agreement to modify, conceding that such an agreement was made.

"As to the first of the contentions urged, we agree with the appellant that certain of the offered testimony was improperly admitted, and cannot be considered in determining the question of the sufficiency of the evidence. The transaction with Conlan, by which the agreement to accept a lesser sum as rental than that provided for in the written lease was had by an officer and stockholder of the respondent as its representa-

tive, and he was permitted to testify to the transaction and to statements made by Conlan in the course of the transaction. We think the stockholder was disqualified under the statute (Rem. Code, § 1211; P. C. § 7722) which excludes a party in interest from giving evidence of transactions had with, or of statements made by, a deceased person, where the adverse party sues or defends as his executor, administrator or as his legal representative." *Conlan v. Spokane Hardware Co.,* 117 Wash. 378, 201 Pac. 26.

The appellant cites the cases of *Beaston v. Portland Trust & Sav. Bank,* 89 Wash. 627, 155 Pac. 162, Ann. Cas. 1917B, 488, and *Northern Bank & Trust Co. v. Harmon,* 126 Wash. 25, 217 Pac. 8, in support of its contention that the testimony of McGrath was admissible. It is obvious that these cases are not in point. The actions were not brought or defended in the name of an executor or administrator or of the legal representative of any deceased person, but, quoting the language of the court in *Beaston v. Portland Trust & Sav. Bank, supra,*

". . . claim, as we understand them, that they defend as deriving right through and from a corporation in which Brainard had an interest; the argument being that, since Brainard was, at the time of making the contract, a stockholder in and president of the milling company, he had a personal interest in the property of that company, and since the claim of the appellant bank to the money in the hands of the clerk affects that property, it affects such interest as Brainard had in the corporation, and to permit Olmstead to testify is to permit a party in interest to testify on his own behalf to a transaction had by him with a deceased person where the adverse party claims by or through such person."

The court held against this contention, saying:

"There are cases which maintain the rule that a stockholder has such an interest in a corporation as to disqualify him from testifying in behalf of the corpo-

ration in an action against the representatives of a deceased person, and cases, also, which maintain the converse of the rule, namely, that if the parties be living, one of them will not be permitted to testify to transactions with the other if the agent of that other, who conducted the transactions, be dead.

"This latter rule [referring manifestly to the converse of the rule first stated] may support the contention of the respondents, but we think the cases upon which it is founded, for the greater part at least, rest upon statutes which can be differentiated from our own, and that they are contrary to the general trend of the cases even upon like statutes. Our statute, it will be observed, applies, in its terms, only *in the case of the death of a natural person who is a principal in the contract.* It makes no reference to corporations, or to agents of corporations, or even to agents of deceased natural persons, and to read into it this further exception would be, we believe, an unwarranted extension of its terms." (Italics ours.)

This language was quoted in *Northern Bank & Trust Co. v. Harmon, supra,* where the question was substantially the same.

With the proper exclusion by the court of the proffered testimony of McGrath, there was no material evidence sustaining the appellant's cross-complaint.

▇ Appellant complains of the judgment for nine hundred dollars awarded to respondent. At the close of the trial, the court permitted an amendment to the complaint conforming to the proof, asking for judgment in the sum of one thousand dollars for breach of paragraphs III and IV of the agreement, under the terms of which the licensee agreed to pay the inventor one thousand dollars in cash upon the sale and acceptance of a second machine by a purchaser, and further agreed to produce and sell, lease, or otherwise dispose of not less than ten machines during the first year. Appellant's contention is that the judgment was erroneous because there was no sale of a second machine.

But the appellant was obligated to produce and sell ten machines the first year. Its failure to do so disabled it to make any sale. It cannot be heard to say that, because of its own breach of one provision of the contract, it was disabled from performing another. Its breach of the contract caused damage to the respondent in the sum of one thousand dollars. In awarding the respondent judgment for nine hundred dollars, rather than one thousand, the court charged her with one hundred dollars which had been received for royalties.

The trial court, in denying respondent the injunction sought, left the appellant in possession of its rights under the original contract, but held that, since it claimed under the contract, it was required to perform the conditions imposed upon it by the contract.

The judgment will be affirmed.

MILLARD, C. J., STEINERT, MITCHELL, and TOLMAN, JJ., concur.