[No. 30654. Department Two. December 30, 1948.]

CHARLES R. McLEAN *et al.*, *Appellants*, v. LENA DALPE ARCHER, *Individually and as Executrix, Respondent.*[1]

[1]Reported in 201 P. (2d) 184.

*Bell, McNeil & Bowles* and *George W. Martin*, for appellants.

*John J. Kennett* and *James D. McCutcheon, Jr.*, for respondent.

SIMPSON, J.—This appeal involves an action for specific performance of an oral contract to convey real estate. The party plaintiff to the original complaint, filed June 24, 1947, and first amended complaint was Charles R. McLean. Demurrer to the original complaint was sustained upon the grounds that: (a) The complaint did not state facts sufficient to constitute a cause of action; (b) the plaintiff did not have legal capacity to sue; (c) there was a defect of parties plaintiff. The record does not disclose the reason for sustaining the demurrer to the first amended complaint. Parties plaintiff to the second amended complaint, upon which the trial was had, were Charles R. McLean and Archer Blower & Pipe Co.

The last complaint filed alleges that: A. C. Archer had been for many years a majority stockholder, president, and

manager of the Archer Blower & Pipe Co., a Washington manufacturing corporation, whose plant was located upon property belonging to Archer. Charles R. McLean had worked for the corporation for a period of eight years prior to September 13, 1945. On or about the day just mentioned, Archer represented to plaintiff McLean that he, Archer, intended to retire as the actual manager of the corporation; that the business had always been a successful venture, and that its good will was of very great value. Archer further represented to McLean that he intended to leave the business to his son, August C. Archer, who was interested in the company and an officer thereof at the time of the conversation, and that he and his son desired McLean to remain with the corporation and purchase a substantial interest in it. Archer conveyed the further information to McLean that he would deed the real property in controversy to the corporation so that it would be secure in its location and not have to pay rent. He also agreed that, if McLean would purchase eighty shares of stock in the corporation, he would give him five shares and would convey title to the real property upon which the company's building was located, to the corporation. McLean accepted the proposition made by Archer, and performed his agreement fully and completely by remaining with the corporation and paying to Archer the sum of twelve thousand dollars for the eighty shares of stock. Archer, however, failed to convey the real property to the corporation.

In her answer, defendant denied the allegations relative to the contract and the failure of Archer to comply with it. She also set up four affirmative defenses. The first defense was the statute of frauds relating to conveying of realty. The second defense set up the fact that the landlord-tenant relationship existed between the plaintiffs and Mr. Archer, and that the plaintiff could not deny title to the property in the defendant. The third defense alleges conduct on the part of plaintiffs which she claimed estopped them from denying the ownership of the land in the defendant. And

the fourth defense alleged a lack of legal capacity in either McLean or the corporation to maintain the action.

The trial of the case resulted in the granting of a motion made by defendant which challenged the sufficiency of plaintiff's evidence.

The assignments of error, eight in number, challenge all of the orders made by the trial court, including the judgment of dismissal.

The facts produced at the trial may be summarized as follows:

The Archer Blower & Pipe Company was organized in 1905 by Alfred C. Archer and two of his brothers. This business has occupied the building and land in question since 1908. In its progress, Alfred C. Archer bought the interests of his brothers, and from that time the stock has been held in a close family circle. Just prior to the alleged contract, Alfred C. Archer owned 250 shares, August C. Archer owned 149 shares, and one share was held by August Archer's wife, Julece. Alfred C. Archer died March 8, 1947. His will was admitted to probate, and the respondent in this case was named as executrix thereof.

August C. Archer, a son of decedent and stepson of respondent, testified for the plaintiffs. He stated that the business had been in its present location since 1905, and that it served sawmills, planing mills, and other varied industries with air-conditioning systems. He testified that the buildings were built to house the present plant; that some of the equipment was old and unusable if moved to any other place, because it was accommodated with two-phase wiring and the electric companies would not service such motors at any other place.

He said that many years ago the real property was in the name of his father and subsequently transferred to the name of Emma Archer, a previous wife of decedent and, upon her death, was again placed in the name of his father. He stated that he had on many occasions talked with his father concerning the rental of the land occupied by the corporation, and, in the summer of 1945, his father appointed

him to go ahead and make a deal "with the boys." This was in the early part of the year. His father said it did not make any difference to him whether he received the money as rent or as salary.

The witness identified plaintiffs' exhibit No. 1 as the corporation minute book. He stated that he had kept the minutes for the last several years; that there was an election of officers subsequent to December 24, 1941; that the last prior election was February 5, 1938. The minutes showed that there was a meeting on September 13, 1945; that the trustees waived notice. Alfred C. Archer, August Archer, and Charles McLean were present at that meeting. He further testified that the minutes were prepared in the book in late 1947, after his father's death, but that he had prepared a rough draft prior to the death of his father, and these minutes were absolutely correct as taken from them. The witness admitted that the minutes of the meeting were typed in an attorney's office in Portland, Oregon. The witness and his attorney conferred over the minutes, and, with Mr. Archer's notes and suggestions and suggestions from the attorney, they were written.

The evidence of Frank W. Hall, given by way of deposition, showed that prior to September 13, 1945, he was approached by A. C. Archer relative to acquiring an interest in the Archer Blower & Pipe Company by buying some stock therein and entering the employ of the company in a supervisory capacity. Thereafter, Mr. Hall, who was a former employee of the corporation, came back to the company and worked for it about a month prior to September 13, 1945. The pertinent portions of his testimony are as follows:

"Mr. Archer came to me and wanted me to buy an interest in the company, and after several discussions I decided to spend a month on a trial basis getting the feel of the thing, so I left my employment with Albers and went over there with Archer, and the agreement was that we were going to each buy twenty per cent of the stock of the company. I think $12000.00 was what we were going to pay, each."

"We were to operate the business, with other stockholders, of course. McLean and I were each going to have twenty per cent of the stock, that is . . . [interpolation] fourth per cent, and he was—as I recall, another one thing that he was going to do on that is that the property itself was separate from the corporation and he was going to deed the property to the corporation when we drew up our contract. . . . I think that we had three meetings with Mr. Archer, McLean and I, and it was during the months of July and August; I cannot fix the date, but during those two months. And one more meeting that August Archer was present. . . . Yes, there was a final meeting. The final meeting I had with Mr. Archer was when I decided not to invest in the company, but to leave, and that was the final meeting I had, when I told him that I was not going to buy into the company and return to my old job, or to a new one that was offered me. . . . After I told him I was not going to buy into the company he was provoked about it and he turned to McLean and he said, 'Well, how about you?' And McLean answered that he was going to carry on the business arrangements."

Rosetta Gifford, an employee of appellant corporation as a bookkeeper and secretary, testified for appellants. She stated that Mr. Archer came to her desk frequently and talked to her about different matters concerning the company and its business, and that she had talked with him concerning the company prior to September 13, 1945. In answer to a question relating to conversations, she stated:

"He came to me and told me that a former employee, Frank Hall, was going to come back to work for him and he would buy stock in the property with Charlie McLean, and he would be able to step out. And he said, 'I'll turn the property over to them and to August and they will have a good business here.' "

Later, in response to a question as to what the next conversation was, she said:

"I believe the next time was when he came to me and informed me that Frank Hall had—[interpolation by counsel and court] This was in September. He came to me and told me that Frank Hall had decided not to go ahead with the purchasing of the stock, but that Charlie McLean was going ahead, and he says, 'He's going to have a good busi-

ness here. I am going to turn the property over to him and to August, and the business will be theirs.' "

In regard to the September conversation, she made the following statement:

"Mr. A. C. Archer told me that he was anxious to get out of the business, that he was tired, that he didn't feel that he should have to carry on and that he wanted Charlie McLean and August Archer to carry on the business and that that particular business at 811 Edmund Street would be theirs, the property, the ground, building, everything, including the stock."

Mrs. Julece T. Archer, wife of August C. Archer, who admitted that she had disposed of her stock in the corporation so that she could testify at the trial of the case, stated that she overheard a conversation in which A. C. Archer said he was going to transfer the property on which the appellant company was located, to the corporation.

Other witnesses testified to about the same effect as the last two from whose testimony we have quoted.

At all times prior to the death of A. C. Archer, rental was paid to him by the corporation. It is indicated by defendant's exhibit No. 2 that appellant corporation, on March 10, 1947, paid to Mrs. L. D. Archer, the respondent, the sum of two hundred dollars for rent. On April 10, 1947, another check was issued for the rent but canceled on the books of the corporation. It later appeared that August Archer took the check and destroyed it.

■ Appellants contend that the evidence introduced at the trial was sufficient to establish the agreement claimed in their cause of action. The general rule relative to the amount of proof necessary to justify specific performance in a case of this nature is laid down in 49 Am. Jur. 34, Specific Performance, § 22, in the following language:

"In order for a court of equity to decree specific performance of a contract, the court must be able to determine what must be done to constitute performance. The indefiniteness of an agreement is an adequate reason for refusal to direct specific performance thereof. The contract itself must make the precise act which is to be done clearly as-

certainable. It is fundamental that in order to do this and to enable the court to decree specific performance, the terms of the contract must be clear, definite, certain and complete."

The plaintiff, in *Savage v. Rodenbeck*, 126 Wash. 29, 216 Pac. 869, brought an action for specific performance of an alleged oral contract to convey real property. This court stated: "Oral contracts such as this must be proved by clear and convincing evidence."

In *Henry v. Henry*, 138 Wash. 284, 244 Pac. 686, this court held that the evidence to sustain an oral promise to make a will must be conclusive, definite, and certain, and establish all the elements of the contract beyond all reasonable doubt; and isolated, indefinite statements made by a husband to leave all of his community property to a nephew working for him on a salary, are not sufficient, in view of his situation and the interests of the testator's wife, and of an inconsistent will making another provision for the nephew.

*Lohse v. Spokane & Eastern Trust Co.*, 170 Wash. 46, 15 P. (2d) 271, was another case where it was sought to establish an oral agreement to make a will. In that case, we said:

"We have adopted the rule that such contracts can be made and proven by parol (*Velikanje v. Dickman*, 98 Wash. 584, 168 Pac. 465; *Alexander v. Lewes*, 104 Wash. 32, 175 Pac. 572), but at the same time we have just as positively declared that the contracts must be proven by evidence that is certain and convincing and in some cases have gone to the extent of saying, 'beyond any reasonable doubt.' *Henry v. Henry*, 138 Wash. 284, 244 Pac. 686. We think a better statement is, that actions of this character must be sustained by testimony which is conclusive, definite and certain and beyond all controversy. *Frederick v. Michaelson*, 138 Wash. 55, 244 Pac. 119. We have also almost invariably said that every case is to be determined upon its own facts and circumstances."

The rule laid down in these cases was followed in *Payn v. Hoge*, 21 Wn. (2d) 32, 149 P. (2d) 939, and *Jennings v. D'Hooghe*, 25 Wn. (2d) 702, 172 P. (2d) 189.

■ The evidence does not show definitely just what the agreement was between McLean and A. C. Archer. The time when the property was to be deeded to the corporation was not mentioned, nor was there any other testimony that showed just what Mr. Archer was to get from the corporation after the property was deeded, except that there was some statement made that he would receive a certain amount of money each month, and that the rental was to be charged to an increase in Mr. Archer's salary after he conveyed the property.

Appellants depend to a large extent upon the contents of the minutes of the board of directors of appellant company dated September 13, 1945. The evidence shows that these minutes were prepared in October, 1947, or a little later, which was several months after A. C. Archer had passed away and subsequent to the beginning of this action. The minutes, as we have indicated before, were prepared by August Archer in Portland, Oregon, with the assistance of an attorney who practices in that city.

It is most interesting to note that the contents of the minutes, as prepared by the witness August Archer and his Portland attorney, are almost identical with the allegations of the complaint in that they set out statements that Mr. Alfred C. Archer expressed that he had been attempting to arrange matters for some period of time so that it would not be necessary for him to be as active in the business as he had been for many previous years; further, that he stated that he had been carrying on negotiations with Mr. Charles R. McLean with the thought in mind of having him become a stockholder, director, officer, and a full-time employee at a reasonable salary, commensurate with his taking over the active management of the corporation. Then there is a statement that Mr. Alfred C. Archer announced that he would convey the title to the real property used and occupied by the corporation, to the corporation, so that the company would be secure in its plant and free of rental payments; and he further stated that, in the event Mr. Charles R. McLean purchased eighty shares of his stock, he

would give him an additional five shares and promised Mr. McLean that no other person except himself, August C. Archer, and Mr. McLean would, at any time, be permitted to have an interest in the business without Mr. McLean's consent. There are other statements in the minutes of the same tenor.

It is very plain to be seen that these minutes, written after Mr. Archer's death and after this action had been commenced, were only for the purpose of supplying evidence to be used in this case. The witness evidently knew that, if he were an interested party, he could not testify as a witness to statements made by his father; so, in order to get the facts before the court, he had prepared the minutes to which we have referred.

It is entirely clear to us, as it was to the trial court, that the evidence submitted in this case, was far from being conclusive, definite, or certain. As a matter of fact, the evidence would not justify the court in submitting any case to a jury were it a case at law.

The next objection made to the trial court's judgment is that there was a complete and full performance of the contract as alleged, which entitled appellants to specific performance; and, for that reason, appellants should have a judgment in their favor. Also, the contention is made that the court should have allowed appellants to introduce evidence to show the cost to appellant corporation of moving from its present location to some other place. It is not now necessary for us to consider these objections, because we have just held that the contract had not been proven.

■ It is urged that the corporation was not a necessary party to this action, and that certain testimony of August C. Archer was improperly excluded. The question of whether or not the corporation was a necessary party is not before us. The record does not disclose that the court at any time compelled appellant Charles R. McLean to bring in the corporation as a party plaintiff, though that is indicated by the fact that the court sustained a demurrer to the first amended complaint. In any event, the appellants cannot now com-

plain, because they did not stand upon their first amended complaint but voluntarily brought the corporation into the case.

■■ Assuming, however, that the question is properly before us, it is our opinion that appellant corporation was a proper and necessary party to this action. The general rule on this question is well stated in 49 Am. Jur. 178, Specific Performance, § 157, in the following language:

"The fundamental rule that all persons whose rights will be directly affected by a decree in equity must, if within the jurisdiction of the court and legally capable of suing or being sued, be joined as parties plaintiff or defendant in order that complete justice may be done and that there may be a final determination of the rights of all parties interested in the subject matter of the controversy governs the question of parties in suits for specific performance."

It must be borne in mind that this action was brought for the purpose, not of having property conveyed to appellant McLean, but to appellant Archer Blower & Pipe Co., a corporation; that is, the action was brought for the benefit of the corporation and its stockholders. It would be an idle gesture to decree specific performance in favor of the corporation without its having been made a party to the action, because the court could not then ascertain whether or not the corporation would want to accept the property.

■ The contention that the corporation was not a proper and necessary party plaintiff is made by appellants for the asserted reason that, had not the corporation been made a party to the action, Mr. August Archer would have been permitted to testify to conversations he had had with his father relative to the alleged contract. The ruling relative to refusal to allow August Archer to testify would have been the same had the corporation not been made a party to the action. He was a stockholder in the corporation and is precluded by Rem. Rev. Stat., § 1211 [P.P.C. § 38-3], from testifying because he was a party in interest. *Conlan v. Spokane Hardware Co.*, 117 Wash. 378, 201 Pac. 26; *Parks v. Sterling Box Machine Co.*, 186 Wash. 269, 57 P. (2d)

1032; and *Carter v. Curlew Creamery Co.*, 16 Wn. (2d) 476, 134 P. (2d) 66.

Appellants take the position that the provisions of Rem. Rev. Stat., § 1211, were waived by the respondent in the cross-examination of Rosetta Gifford, and that the testimony of Charles R. McLean and August C. Archer was admissible. The record discloses that the witness Gifford was cross-examined to a great extent by attorney for respondent. It must be admitted that the bar of the statute may be waived. *Miller v. O'Brien*, 17 Wn. (2d) 753, 137 P. (2d) 525.

Appellants base their contention upon our holding in *Robertson v. O'Neill*, 67 Wash. 121, 120 Pac. 884. In that case, the plaintiff sought to recover upon an account for money advanced and services rendered to the deceased in his lifetime. The respondent was permitted to testify that the deceased checked over his account, said that he approved it, and that it was correct. The court held that the introduction of the evidence was clearly incompetent under the provisions of the statute. It further held, however, that the error was waived by the appellant. The appellant, in that case, cross-examined the respondent touching a number of items in the account, had him identify the checks of the deceased, and had him admit that he received the checks and cashed them. He later called the respondent and had him identify the signatures to certain exhibits. In holding that the provision of the statute was waived, the court said:

"It would, however, be palpably unjust to permit the representative of a deceased person to use the adverse party to the extent that it might aid him in defeating a claim or in establishing an independent claim in favor of the estate, and then claim the benefit of the statute when the adverse party sought to qualify or explain his testimony."

The court also held that a like rule applies where the cross-examination is extended beyond the scope of what the witness would have been permitted to testify in chief upon direct examination. This rule has been adhered to by this court through the years from the time the *Robert-*

*son* case was decided. See *Ellis v. Wadleigh,* 27 Wn. (2d) 941, 182 P. (2d) 49.

We adhere to the rule but fail to see how it applies in the case at bar. The witness Gifford was not a party interested in the result of this litigation. She did not stand to gain any financial or other advantage by having the case decided in favor of the appellants. The statute prohibiting anyone who is an interested party from testifying to statements made by persons since deceased, certainly has no application to an employee of a corporation such as the witness Gifford.

We find no error and therefore affirm the judgment.

MALLERY, C. J., MILLARD, ROBINSON, and SCHWELLEN-BACH, JJ., concur.

[1]Reported in 201 P. (2d) 191.