# ERNEST SYLVESTER v. NORTHWESTERN HOSPITAL OF MINNEAPOLIS.[1]

April 18, 1952.

No. 35,691.

[1]Reported in 53 N. W. (2d) 17.

*Hall, Smith & Hedlund,* for appellant.
*Durham & Swanson,* for respondent.

MATSON, JUSTICE.

Appeal·from an order denying plaintiff's motion to vacate a directed verdict and for a new trial.

This is an action for damages for personal injuries alleged to have been sustained by plaintiff as a result of defendant hospital's negligence in failing to protect plaintiff from injuries caused by the violence of another patient who was intoxicated.

Taking, as we must, the view of the evidence most favorable to plaintiff, it appears that plaintiff was admitted to defendant hospital on December 13, 1948, for an appendectomy. After the operation he was placed in a six-bed ward to convalesce. On December 21, the stitches were removed in anticipation of his release from the hospital the next day. On the evening of that day, another patient, Red Hanson—hereinafter called Red—came into plaintiff's ward in such an intoxicated condition that he was staggering back and forth. Red threw himself onto plaintiff's bed and in so doing pushed it until it was almost against the next bed. After pulling the sheets off plaintiff, Red grabbed plaintiff's fingers and twisted them so as to cause pain. When plaintiff protested, Red became angry and took off his nightgown, which he rolled into a ball and threw at another patient. After 20 to 30 minutes of such disturbance, plaintiff asked Red to leave the room. Red said that he would if plaintiff would help him to put on his bathrobe. While plaintiff was assisting him, Red suddenly struck plaintiff in the

abdomen adjacent to the appendectomy incision. As a result of the blow, plaintiff suffered considerable pain and injury, for which he seeks by this action to recover damages from defendant hospital on the theory that it was negligent in permitting Red to move about the hospital in an intoxicated condition, thereby endangering plaintiff's safety. At the close of plaintiff's evidence, the trial court granted defendant's motion for a directed verdict.

The evidence indicates that on other occasions Red had staggered into plaintiff's ward in a drunken condition. It further appears that in order to reach plaintiff's ward Red had to walk the full length of the hospital. In short,.there was evidence from which a jury could reasonably find that defendant hospital knew, or ought to have known, that Red, as one of its patients, was wandering about the hospital in an intoxicated condition; but there is no satisfactory evidence that it actually knew that, when intoxicated, he was possessed of vicious tendencies.

■ A private hospital, although it is not an insurer of the safety of a patient, must exercise such reasonable care for the protection and well-being of a patient as his known physical and mental condition requires or as is required by his condition as it ought to be known to the hospital in the exercise. of ordinary care.[2] As to the danger of self-injury[3] or as to the danger reasonably to be anticipated from the acts of another person under the hospital's control, the reasonable care to be exercised must always be in proportion to the patient's inability to look after his own safety. The standard of reasonable care is that which would be exercised by a reasonably prudent person under the same or similiar circumstances and does

[2]See, Mesedahl v. St. Luke's Hospital Assn. 194 Minn. 198, 259 N. W. 819; Mulliner v. Evangelischer Diakonniessenverein, 144 Minn. 392, 175 N. W. 699; Wetzel v. Omaha Maternity & General Hospital Assn. 96 Neb. 636, 148 N. W. 582; Broz v. Omaha Maternity & General Hospital Assn. 96 Neb. 648, 148 N. W. 575, L. R. A. 1915D, 334; 26 Am. Jur., Hospitals and Asylums, § 14; for excellent note, see 2 Vanderbilt L. Rev. 660.

[3]See, Mesedahl v. St. Luke's Hospital Assn. 194 Minn. 198, 259 N. W. 819.

not require the taking of precautionary measures to avert a danger which a reasonable person would not anticipate as likely to happen.[4]

■ The duty to protect a patient, and persons similarly situated, from the acts of third persons is more fully set forth in Restatement, Torts, § 320, as follows:

"One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal power of self-protection or to subject him to association with persons likely to harm him, is under a duty of exercising reasonable care so to control the conduct of third persons as to prevent them from intentionally harming the other or so conducting themselves as to create an unreasonable risk of harm to him, if the actor

"(a) knows or has reason to know that he has the ability to control the conduct of the third persons, and

"(b) knows or should know of the necessity and opportunity for exercising such control."

Thus a hospital which accepts patients who are either insane or suffering from some other mental disorder under such circumstances that the hospital either has actual knowledge, or the circumstances are such that by the exercise of reasonable care it should have known of the patient's dangerous and assaultive tendencies, has been liable to other patients for injuries inflicted on them by such patient.[5]

In Christianson v. C. St. P. M. & O. Ry. Co. 67 Minn. 94, 97, 69 N. W. 640, 641, Mr. Justice Mitchell states the rule:

"* * * If a person had no reasonable ground to anticipate that a particular act would or might result in any injury to anybody, then, of course, the act would not be negligent at all; * * *. Otherwise expressed, the law is that if the act is one which the party

---

[4]Prosser, Torts, § 36.

[5]University of Louisville v. Hammock, 127 Ky. 564, 106 S. W. 219, 14 L.R.A.(N.S.) 784; Rossing v. State (Ct. Cl.) 47 N. Y. S. (2d) 262. For a collection of such cases, see 22 Negligence and Compensation Cases Annotated (N.S.) 7-13; see, Restatement, Torts, § 319.

ought, in the exercise of ordinary care, to have anticipated was liable to result in injury to others, then he is liable for any injury proximately resulting from it, *although he could not have anticipated the particular injury which did happen."*[6] (Italics supplied.)

The law from ancient times has recognized that an intoxicated person is likely to cause injuries not only to himself but to others. See, 32 Journal of Criminal Law and Criminology, 297. The first great English statute on the subject was enacted in 1606. 4 Jac. I, c. 5. Under this statute—

"The penalty for each conviction was five shillings; if the offender was unable to pay this fine, he was to be 'committed to the stocks for every offence, there to remain by the space of six hours,' *'by which time,'* states Blackstone, 'the statute presumes the *offender will have regained his senses, and not liable to do mischief to his neighbors.' "*[7] (Italics supplied.)

It is elementary, of course, that a person is liable in negligence even though his negligent acts stem from a lack of self-control and recklessness born of his intoxication.[8] The seriousness and the frequency of the harm that an intoxicated person is likely to cause third persons has become so well recognized that, in order to transfer the burden of damages from society to one who illegally furnished the liquor, many states, including Minnesota (M. S. A. 340.95 and 340.73), have passed civil liability statutes giving any person who is injured in person, property, or means of support by an intoxicated person, or by the intoxication of any person, a right of action against anyone illegally selling or furnishing liquor to such person.[9] Further recognition of drunken persons as a reasonably

[6]This rule was adhered to in Knight v. Powers Dry Goods Co. Inc. 225 Minn. 280, 30 N. W. (2d) 536.

[7]32 Journal of Criminal Law and Criminology, 297; see, 4 Blackstone, Commentaries, 64.

[8]See, Wheeler v. Grand Trunk Ry. Co. 70 N. H. 607, 50 A. 103, 54 L. R. A. 955; Annotation, 47 L.R.A.(N.S.) 730.

[9]See, 34 Ill. L. Rev. 30; 37 Ill. L. Rev. 57; Joyce, Intoxicating Liquors, § 427; 2 Woollen & Thornton, Law of Intoxicating Liquors, §§ 1030-1039.

anticipated source of danger to others is illustrated by the high degree of liability therefor imposed upon common carriers and hotel and innkeepers. See, Mastad v. Swedish Brethren, 83 Minn. 40, 85 N. W. 913, 53 L. R. A. 803; Mullan v. Wisconsin Central Co. 46 Minn. 474, 49 N. W. 249.

That the experience of mankind, as reflected by a variety of remedial liabilities imposed by law, is not alone in its recognition that intoxication by itself causes an otherwise safe person to become a hazard to others, is corroborated by the fundamental findings of medical science. It has been pointed out that the higher centers of the brain, which are responsible for the individual's acquiescence in the habits of civilization, are so affected by alcohol as to dull his feeling of responsibility and allow his more primitive cerebral functions to dominate. See, Journal American Medical Assn. 859:142 (March 13) 1950. Although intoxication produces a variety of physical and mental reactions which vary with the individual and the amount of alcoholic intake, authorities recognize that drunken behavior is unpredictable; also that slight irritations, real or imaginary, may cause outbursts of anger and lead to aggressive acts.[10]

In the light of the unpredictable behavior of an intoxicated person as a well-recognized source of danger to others, it follows that where defendant hospital knew, or in the exercise of reasonable care ought to have known, that one of its patients was so intoxicated as to stagger when walking, it ought reasonably to have anticipated—although it had no actual knowledge that such patient was possessed of vicious or aggressive tendencies when drunk—that to permit him to wander about the hospital unguarded was likely to result in injury to other patients, and it is liable for any injury which proximately resulted from his intoxicated condition, although it could not have anticipated the particular injury which did happen. A person whose intoxication renders him in-

[10]See, Haggard & Jellinek, Alcohol Explored (1942) 111; Emerson, Alcohol and Man (1932) 257, 258; Alcohol, Science and Society (Quarterly Journal of Studies on Alcohol) 143.

capable, physically and mentally, of self-control, irrespective of any vicious propensities, is an unreasonable source of danger to other patients, in that he may cause them injury by falling upon them or by good-natured though reckless scuffling. In the instant case, plaintiff, with his appendectomy incision, was exposed to unreasonable danger when Red fell upon him and across his bed. It is immaterial that plaintiff's injury occurred when Red lost his mental balance and, without justifiable reason, became angry and vented his spleen upon plaintiff by striking him in the abdomen. Where there is liability for any injury proximately resulting from negligent conduct, it is immaterial that defendant could not have anticipated the particular injury which did occur.

The order of the trial court is reversed.

Reversed.

[1]Reported in 53 N. W. (2d) 117.