**Terrance ALHOLM, Appellant,**

v.

**Richard E. WILT, d.b.a. Lakeside Bar, Respondent.**

**No. CX–85–1238.**

Court of Appeals of Minnesota.

Jan. 28, 1986.
Review Granted March 27, 1986.

Harold R. Fritz, II, Nisswa, for appellant.

John W. Person, Brainerd, for respondent.

Heard, considered and decided by SEDGWICK, P.J., and RANDALL and CRIPPEN, JJ.

## OPINION

RANDALL, Judge.

This appeal involves a claim of innkeeper's liability. Terrance Alholm appeals from a jury verdict for respondent Richard Wilt and from the trial court's denial of his motion for judgment notwithstanding the verdict (JNOV) or new trial. We affirm in part, reverse in part, and remand for a new trial.

## FACTS

In the early morning hours of August 16, 1980, William Miles struck appellant in the face and arm with a bar glass. The incident occurred in an alley behind the Lakeside Bar as both men were leaving the bar. Respondent Richard Wilt owned the Lakeside Bar (Lakeside).

Appellant sued respondent on two theories: 1) dram shop liability, and 2) negligence/innkeeper's liability. The jury found in appellant's favor on the dram shop claim, but the trial court directed a verdict for respondent on innkeeper's liability. Alholm appealed.

On that appeal, this court reversed the denial of appellant's motion for a new trial

and remanded for trial on the issue of innkeeper's liability. *Alholm v. Wilt,* 348 N.W.2d 106 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn. Sept. 12, 1984) (*Alholm I*).

At the second trial on appellant's claim of innkeeper's liability, the jury returned a verdict for Wilt and this second appeal followed.

Both appellant and his assailant Miles had been drinking at the Lakeside Bar prior to the altercation in the alley. The amount of time that each was present and their level of alcohol consumption was the subject of conflicting testimony.

Elizabeth Winson, a bartender, testified that Miles and another individual requested a drink after she had given last call. When she refused to serve them, one of them slammed his fist on the bar. She testified that both men were yelling, angry and drunk. Winson motioned for the bouncer to assist her and then went to the other end of the bar to clean up. The bouncer asked the men to leave.

Terrance Alholm was at the Lakeside Bar drinking and dancing with his wife. Just before leaving the bar at closing time, he went to the restroom. When appellant came out of the restroom, Miles began yelling and swearing at him and his wife. This incident lasted only a few seconds.

The Alholms then left the bar with Miles behind them. Appellant's wife testified that she heard someone say, "You better follow them, there is going to be trouble." When they reached the alley, appellant offered to fight with Miles if he would put down the glass he was holding. Instead, Miles hit appellant with the glass.

Several witnesses testified that they did not notice any disruption in the bar that evening. Winson testified that although she was in a position to observe the area near the restrooms, she did not see or hear anything unusual and nothing attracted her attention.

Miles admitted that he previously had been involved in arguments and "slapping matches" at the Lakeside Bar. He stated, however, that the prior fights took place outside the bar. He further testified that none of the bar employees had ever observed any of the fights or had any reason to consider him a violent or dangerous person.

The jury found that the Lakeside Bar was not negligent in the operation of its establishment. Appellant moved for JNOV or a new trial on three grounds: 1) that the method of selecting the alternate juror was not in accordance with Minn.R.Civ.P. 47.02; 2) that the trial court erred by refusing to give his requested jury instructions; and 3) that the verdict is not supported by the evidence. That motion was denied and judgment was entered for respondent.

## ISSUES

1. Did the trial court err by denying appellant's motion for new trial based on irregularity in the selection of the alternate juror?

2. Did the trial court err by refusing to give appellant's requested jury instructions?

3. Is the verdict supported by the evidence?

## ANALYSIS

### I.

*Selection of alternate juror*

Appellant's first assignment of error is the method used by the trial court to select the alternate juror. Some courts in the Ninth Judicial District have for some time employed a system of selecting alternate jurors not specified in Minn.R.Civ.P. 47.02. For this civil jury of six people plus one alternate, eleven names were drawn by the clerk of court at random from a larger panel. The attorneys exercised their respective two peremptory strikes and the seven jurors left sat throughout the trial but without designation of the alternate. At the close of the evidence, and just before the jury retired to deliberate, the clerk of court selected a name from the seven by random draw. That juror was then desig-

nated the alternate and excused, while the other six remained to decide the case.

The court's reasoning for this selection method is that under the rule method of selecting a jury first and the alternate(s) second, the alternates, knowing only a slim possibility exists that alternates actually get to decide the case, do not have the same motivation as the others to pay close attention throughout the trial. Thus, if the alternate eventually sits, that juror is theoretically not as familiar with the facts as the others.

■ Whether or not this theory is sound, it does not comply with the controlling rule. Minn.R.Civ.P. 47.02 says:

The court may direct that one or two jurors in addition to the regular panel be called and impaneled to sit as alternate jurors. *Alternate jurors*, in the order in which they are called, *shall replace jurors who*, prior to the time the jury retires to consider its verdict, *become unable or disqualified to perform their duties.* Alternate jurors shall be drawn in the same manner, shall have the same qualifications, shall be subject to the same examination and challenges, shall take the same oath, and shall have the same functions, powers, facilities, and privileges as the principal jurors. An alternate juror who does not replace a principal juror shall be discharged after the jury retires to consider its verdict. *If one or two alternate jurors are called, each party is entitled to one peremptory challenge in addition to those otherwise allowed by law.* The additional peremptory challenge may be used only against an alternate juror, and the other peremptory challenges allowed by law shall not be used against the alternates.

(emphasis added).

■ The section of this rule which states: "alternate jurors * * * * shall replace jurors who * * * become unable or disqualified to perform their duties" is compatible only with a selection process wherein the jury is selected first, and then one or two alternates are selected to sit if a regular juror becomes unable or disqualified to serve.

Appellant argues that the selection process used leaves undecided who is the alternate until all the evidence is in, the jury is just about ready to retire, and the clerk finally makes a random selection. We agree.

In effect, the selection process in question starts the trial with a panel of *seven* qualified jurors, as they are all qualified until the clerk draws a name at random and the court excuses that person. Nothing in Minnesota case law or rule contemplates a seven-person civil jury. The law contemplates a six-person civil jury *and* then one or two optional alternates. The law distinguishes between a regular juror and an alternate. The clearest reading of Rule 47.02 is that the difference is known when voir dire is complete but before the evidence is presented.

In addition, part of the rule states:

If one or two alternate jurors are called, each party is entitled to one peremptory challenge in addition to those otherwise allowed by law. The additional peremptory challenge may be used only against an alternate juror, and the other peremptory challenges allowed by law shall not be used against the alternates.

The selection process used did not allow each attorney their absolute right to one peremptory challenge for the alternate. If, at the close of the case when the trial court designated the alternate, each attorney had demanded a right to exercise that one peremptory challenge, the seven jurors would have been reduced to five and a mistrial would have resulted.

■ The fairest reading of Rule 47.02 contemplates that the attorneys will select the regular panel using or waiving their two peremptory challenges and, immediately following the selection of the regular panel, if one or two alternates are desired, each attorney will exercise or waive their one peremptory challenge as to the alternate(s). The rule contemplates, and the attorneys are entitled to know before the

trial starts, who is on the regular panel and who is the alternate(s).

Appellant argues that pursuant to the wide-spread custom[1] he was used to, the last (in this case the seventh) juror seated and not disqualified was the alternate, but since the name the clerk drew from the box and excused by the court was one of the first six chosen, there was error. Appellant argues that the trial court improperly excused a regular juror instead of the alternate. Appellant argues that he was prejudiced by this error as the seventh, or last, juror chosen and seated who ended up being a member of the regular jury panel, was a former bar owner and predisposed against his client who was suing a bar.

Appellant argues that had he known that this juror might end up on the regular jury, he would have exercised a peremptory strike but, assuming that she would be the alternate and likely would not finally sit on the case, decided not to use one of his peremptory challenges.

■ Respondent argues that appellant did exercise the right to ask that juror questions on voir dire and, by not using a peremptory, waived his right to now object. Based on the peculiar facts of this case and the circumstances, we do not find such a waiver.

Respondent agrees that in the selection of the jury the court failed to provide both lawyers with the extra peremptory challenge for the alternate as required by Minn.R.Civ.P. 47.02. At oral argument respondent conceded that the method of selecting alternates assumed by appellant was, in fact, the norm in the surrounding areas. Respondent agreed that he himself was familiar with that method and had no reason to believe that appellant knew when coming to the Ninth Judicial District that another method might be used.

Respondent also stated that he knew of no routine dissemination by letter or memo to all attorneys practicing in the Ninth Judicial District that Rule 47.02 was interpreted differently. Thus, we can find no bad faith on the part of appellant in not raising the question until the trial had concluded and he became aware for the first time of the method to be employed. We do not find in the record any facts to support respondent's claim that appellant waived his right to object to the selection method by not objecting until the conclusion of the trial. The end of the trial is the first time appellant knew how the alternate was to be designated.

■ Although we agree with the concern of trial courts for the attentiveness of alternate jurors, and agree that the methods used to assure that attentiveness are within the discretion of the court, the methods

---

1. In many areas of the state, a slight variation on the rules is used by pretrial agreement of court and counsel. The method of designating the last juror selected and not excused for cause as the alternate preserves the right of both attorneys to know who the alternate will be, and they can use their peremptory strikes accordingly. Some trial courts indicate to the alternate before the start of the evidence that they have been designated an alternate. They then instruct the alternate(s) to follow the evidence as if they were a regular juror and told that they will sit as a regular juror and decide the case should anyone on the jury become sick or otherwise unable to continue. The courts that do this feel this cautionary instruction sufficiently addresses the concern for an alternate's attention.

Other trial courts, when using this last person seated and not stricken as the alternate juror method, do not tell the alternate(s) until the conclusion of the trial that they are the alternate and will now be excused. The courts using this option feel this assures them undivided attention of all seven. This method satisfies the intent of Rule 47.02 as this method ensures that at the conclusion of voir dire, but prior to the start of the testimony, both attorneys and the court knew who the alternate is, just the alternate does not know at that point. This still gives to the attorneys their right under the rule to know who the alternate is, and they can dictate their strategy in using their peremptory strikes accordingly.

We agree with the concern of the Ninth Judicial District that attentiveness throughout the trial of the alternate(s) is an important concern. However, the method selected to ensure that attentiveness must be addressed within the confines of Rule 47.02. The two widely used options discussed in this footnote address that concern following Rule 47.02. The method used for our consideration on appeal addresses the concern for attentiveness but not within the rule.

used still must be within the confines of Rule 47.02 and must ensure to both attorneys the right to know who is the prospective jury and who is the prospective alternate(s) prior to using their peremptory strikes.

## II.

*Jury instructions*

Appellant requested that the jury be instructed as follows:

> The law recognizes drunken persons as a reasonably anticipated source of danger to others and therefore requires tavern keepers to exercise the highest degree of care to protect its patrons from harm at the hand of said drunken persons.

Appellant also requested that an instruction defining highest degree of care be given.

■ A party is entitled to a specific instruction on his theory of the case if the evidence supports it and if the instruction is in accord with the applicable law. *Cornfeld v. Tongen*, 262 N.W.2d 684, 698 (Minn. 1977).

■ Minnesota law requires that tavern owners exercise reasonable care under the circumstances to protect their patrons from injury. *See, e.g., Filas v. Daher*, 300 Minn. 137, 218 N.W.2d 467 (1974); *Priewe v. Bartz*, 249 Minn. 488, 83 N.W.2d 116 (1957).

Appellant's reliance on *Sylvester v. Northwestern Hospital*, 236 Minn. 384, 53 N.W.2d 17 (1952), for the proposition that tavern owners must exercise the highest degree of care is misplaced. In *Sylvester*, a hospital patient was injured by another patient who was intoxicated. Although the court recognized that intoxicated persons pose a threat to others, it stated that the requisite standard of care was that of reasonable or ordinary care. 236 Minn. at 386, 387, 52 N.W.2d at 19, 20. Nonetheless, the hospital could be liable even though the particular injury could not have been anticipated. Because of the potential danger associated with drunken persons, injury was foreseeable. Thus, the court distinguished foreseeability from standard of care.

■ Appellant's requested instructions are not in accord with the applicable law. The correct standard of care is ordinary care, not the highest degree of care. Therefore, the trial court's refusal to give the requested instructions was proper.

■ The trial court gave a general negligence instruction in addition to delineating the elements of innkeeper's liability as set forth in *Alholm I*. The instructions were adequate to apprise the jury of the applicable law. *See Cobb v. Aetna Life Insurance Co.*, 274 N.W.2d 911 (Minn.1979).

## III.

*Sufficiency of the evidence*

Because we dispose of this case on the issue of jury selection, we do not address appellant's argument that the verdict is not supported by the evidence.

### DECISION

We affirm the trial court on the issue of jury instructions. We remand to the trial court for a new trial based on an error of law occurring in the selection of the alternate juror.

Affirmed in part, reversed in part and remanded.