K.L., Appellant,

v.

**RIVERSIDE MEDICAL CENTER,
et al., Respondents.**

No. CX–94–632.

Court of Appeals of Minnesota.

Dec. 6, 1994.

Review Denied Feb. 3, 1995.

Curtis D. Brown, James H. Kaster, Nichols, Kaster & Anderson, Minneapolis, for appellant.

Mark R. Whitmore, Rebecca Egge Moos, Bassford, Lockhart, Truesdell & Briggs, P.A., Minneapolis, for respondents.

Considered and decided by HARTEN, P.J., and DAVIES and AMUNDSON, JJ.

## OPINION

DAVIES, Judge.

Patient challenges the trial court's evidentiary rulings and the court's directed verdict holding that hospital owed no duty to prevent a sexual assault. We affirm.

## FACTS

Appellant K.L. entered the adult chemical dependency unit at Riverside Medical Center in Minneapolis. While K.L. was suffering from alcohol withdrawal, someone knocked on her door and said, "K."[1] When she answered, a well-dressed man came into her room and asked how old she was. When K.L. said she was 49, the man, later identified as Aron Ghebrezghi, said, "You're a nice looking lady for 49 years old." After Ghebrezghi said he was a chiropractor and asked K.L. if she would like a back rub, she said she would. She turned over on her stomach and Ghebrezghi rubbed her back.

Ghebrezghi then asked if he could shut the door and started to get up to do so. K.L. told him he could not shut the door and that patients were not allowed to shut their doors. Ghebrezghi then returned, put his penis on the bed, took K.L.'s hand, and said, "Here, put your hand on this." When K.L. threatened to call the nurse, Ghebrezghi said, "No. No. No. I'm going." He then left. K.L. did not immediately report the assault.

The next day, K.L. again saw Ghebrezghi in the smoking lounge of the chemical dependency unit. She ran to the nurses' station to report Ghebrezghi's assault, but did not follow through because the nurse she asked for was not available. K.L. then went downstairs on an errand, where she saw Ghebrezghi standing by the hospital's main entrance. Thinking Ghebrezghi was stalking her, K.L. ran back to the nurses' station and reported the assault to the nurse she had asked for earlier.

It is Riverside's policy to investigate any patient's report of inappropriate touching, regardless of whether the staff believes the report. Despite this policy, the nurse did not initially report the incident, believing K.L.

had hallucinated. The incident was not reported to Riverside security until the following day.

Four days after the assault, K.L. saw Ghebrezghi again. A patient who was aware of the assault immediately notified security of Ghebrezghi's presence and he was arrested.

David Hiers, Riverside's Director of Operations, testified that the nature of the chemical dependency unit requires openness. Many people come to visit patients, and the patients must be free to come and go. On cross-examination, Hiers admitted there was no procedure to check the identity of visitors to the unit; although a nametag policy was "religiously" followed for staff and patients, it was not followed for visitors. Furthermore, nonstaff physicians, psychologists, and counselors did not have to wear nametags while at the chemical dependency unit. Ghebrezghi, who had no legitimate reason to be in the unit, was never asked to wear a nametag.

Lynn Bower, the nursing manager of the chemical dependency unit, said that any unfamiliar person without a nametag was stopped at the front desk into the chemical dependency unit. It was, however, possible to get on the unit without walking by the front desk; in addition, if the people at the front desk were busy with other duties, they might not ask for identification.

K.L. called Lawrence Talley as a security expert. Talley reviewed security logs from October 15 to December 13, 1989. In that period, there were 18 incidents, counting K.L.'s, in which Riverside's security responded to calls about suspicious persons. Some of these involved persons in patient rooms and restricted areas. No report involved violence or threats to patients.

At the conclusion of K.L.'s case, the trial court granted Riverside's motion for a directed verdict, finding that Ghebrezghi's conduct was unforeseeable and, therefore, Riverside had no duty to protect K.L. from Ghebrezghi. K.L. appeals, challenging the directed verdict and the trial court's evidentiary rulings.

---

1. Patients' names are on their doors.

## ISSUES

I.  Did the trial court err in directing a verdict for Riverside?

II.  Did the trial court abuse its discretion in its evidentiary rulings?

## ANALYSIS

### I.  Standard of Review

A motion for a directed verdict presents the trial court with a question of law: Is the evidence sufficient to present a fact question for the jury? *Claflin v. Commercial State Bank of Two Harbors*, 487 N.W.2d 242, 247 (Minn.App.1992), *pet. for rev. denied* (Minn. Aug. 4, 1992). In reviewing a directed verdict, appellate courts review the evidence and its inferences to determine independently whether the evidence is sufficient to present a fact question for the jury. *Nemanic v. Gopher Heating & Sheet Metal*, 337 N.W.2d 667, 669 (Minn.1983).

Here, the trial court concluded that Riverside owed no duty to prevent Ghebrezghi's assault on K.L. Whether a legal duty exists is, on agreed facts, a question for the court to determine as a matter of law. *Larson v. Larson*, 373 N.W.2d 287, 289 (Minn. 1985).

Generally, a person has no duty to control the conduct of a third person to prevent injury to another. *Delgado v. Lohmar*, 289 N.W.2d 479, 483 (Minn.1979). Whether Riverside had a duty to protect K.L. from Ghebrezghi's assault depends on two factors: (1) the existence of a special relationship between Riverside and K.L. giving K.L. the right to protection; and (2) the foreseeability of the harm that resulted. *Lundgren v. Fultz*, 354 N.W.2d 25, 27–28 (Minn.1984). Riverside concedes it had a special relationship with K.L. The question is whether Ghebrezghi's conduct was foreseeable.

"Generally, the issue of foreseeability is for the trial court to decide." *Spitzak v. Hylands, Ltd.*, 500 N.W.2d 154, 158 (Minn.App. 1993), *pet. for rev. denied* (Minn. July 15, 1993). The harm to K.L. can be said to be foreseeable if Riverside was aware of facts indicating that patients had previously been exposed to an *unreasonable* risk of harm. *Id.*

A duty to prevent a wrongful act by a third party will be imposed only where those wrongful acts can be reasonably anticipated. *Ann M. v. Pacific Plaza Shopping Ctr.*, 6 Cal.4th 666, 25 Cal.Rptr.2d 137, 863 P.2d 207, 213–14 (1993). Acts such as Ghebrezghi's sexual assault on K.L. will rarely be deemed foreseeable in the absence of prior similar incidents. *Id.* at 145, 863 P.2d at 215. In this case, there is no evidence of prior similar incidents.

Two cases involving hospitals illustrate facts that make injuries by a third person foreseeable. In *Sylvester v. Northwestern Hosp. of Mpls.*, 236 Minn. 384, 53 N.W.2d 17 (1952), a patient was injured by an intoxicated patient. Although there was evidence that the hospital knew or should have known the patient had in the past wandered around the hospital while intoxicated, there was no evidence that the hospital knew that this particular patient became violent when intoxicated. *Id.* at 386, 53 N.W.2d at 19. Nevertheless, the *Sylvester* court held that knowledge of the patient's habit of wandering about the hospital while intoxicated was sufficient to find the hospital liable, in light of "the experience of mankind" "that intoxication by itself causes an otherwise safe person to become a hazard to others." *Id.* at 389, 53 N.W.2d at 20.

In *Roettger v. United Hosps. of St. Paul*, 380 N.W.2d 856 (Minn.App.1986), a person who had previously been warned to leave the hospital assaulted the plaintiff in her hospital room. Before the assault, the security staff at the hospital considered the assailant to be a thief who had been stealing from the hospital for months and who, if found on hospital property, should be arrested. But once when found on hospital property before the assault, the attacker was once only warned "to stay out of the hospital," although on another occasion, the assailant was arrested for trespassing. *Id.* And shortly before the assault, the man was in a visitor's lounge at 2:00 in the morning, with liquor on his breath, pacing, smoking cigarettes, and disturbing a patient's relatives. *Id.* at 861–62.

Here, there is no evidence that the hospital knew Ghebrezghi had been behaving suspiciously on prior occasions. At the time of the incident, K.L. testified that Ghebrezghi was very neatly dressed; she thought he was a doctor or a counselor. When Ghebrezghi earlier asked David Hiers, Riverside Director of Operations, for confidential patient information, Hiers was not suspicious because of Ghebrezghi's neat appearance.

Although there were numerous reports of suspicious persons on the hospital grounds, there was no evidence that there had been assaults on patients while in their rooms. Lynn Bower testified that this was the only time in her 24-year nursing career that a person had come off the street and harmed a patient.

The evidence shows that there were no previous assaults on patients at Riverside, that Ghebrezghi himself had never behaved suspiciously in the past, and that previous reports of trespassers and suspicious persons had not involved assaults upon patients. Given these facts, we conclude that it was not foreseeable that K.L. would be exposed to an unreasonable risk of harm from Ghebrezghi.

 Whether a duty will be imposed is ultimately a policy question. *Erickson v. Curtis Inv. Co.*, 447 N.W.2d 165, 169 (Minn. 1989). One consideration is the cost-benefit equation. *Id.* The question is whether the foreseeable likelihood of harm warrants the burden imposed to prevent that harm. *Ann M.*, 25 Cal.Rptr.2d at 145, 863 P.2d at 215 (quoting *Isaacs v. Huntington Memorial Hosp.*, 38 Cal.3d 112, 211 Cal.Rptr. 356, 695 P.2d 653, 658 (1985)). Posting guards at each entrance to each building on the Riverside campus might decrease the threat of random assaults on patients. But the cost would be grossly out-of-proportion to the security gained.

The trial court did not err in holding that Riverside had no duty to prevent Ghebrezghi's assault on K.L.

### II. Evidentiary Rulings

The decision whether to admit or exclude evidence is left to the sound discretion of the trial court. *Uselman v. Uselman*, 464 N.W.2d 130, 138 (Minn.1990). That decision will not be reversed on appeal unless it is based on an erroneous view of the law or constitutes an abuse of discretion. *Id.* Error in evidentiary rulings will not entitle an appellant to a new trial unless the appellant can demonstrate that the error was prejudicial. *Id.*

K.L. challenges the trial court's (1) exclusion of crime statistics for the neighborhood around the hospital, (2) ruling that evidence of thefts occurring after December of 1989 was irrelevant, (3) refusal to allow a security officer who worked only occasional shifts at Riverside to testify regarding his opinion of the adequacy of security at the hospital, (4) exclusion of testimony regarding the Minneapolis Police Department's undercover apartment a few blocks from the hospital, and (5) exclusion of Ghebrezghi's medical records. There was no abuse of discretion in excluding any of this irrelevant and remote evidence.

### DECISION

The trial court properly directed a verdict because there was no foreseeable unreasonable risk. There was no abuse of discretion in the trial court's evidentiary rulings.

**Affirmed.**