**William KAY, Appellant,**

v.

**FAIRVIEW RIVERSIDE HOSPITAL, et al., Respondents.**

**No. C8–95–168.**

Court of Appeals of Minnesota.

May 23, 1995.

Review Denied July 20, 1995.

Robert J. Brenner, Jesse Gant, III, Robert Brenner & Associates, P.A., Minneapolis, for appellant.

Rebecca Egge Moos, Mark R. Whitmore, Kathryn H. Davis, Bassford, Lockhart, Truesdell & Briggs, P.A., Minneapolis, for respondents.

Considered and decided by HARTEN, P.J., RANDALL and SCHULTZ,* JJ.

## OPINION

HARTEN, Judge.

Appellant challenges the summary judgment in favor of respondents on appellant's claims of negligence and violation of the Vulnerable Adult Act. Appellant also challenges the denial of his motion to amend the complaint. We affirm.

## FACTS

On February 9, 1993, appellant's mother, decedent Mary Rita Kay, was admitted to the hospice unit at respondent Fairview Riv-

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

erside Hospital (Riverside). Decedent had been diagnosed as having terminal cancer. Before her admission, decedent's physician had placed her on "do not resuscitate/do not intubate" (DNR/DNI) status. Upon decedent's admission, appellant signed an acknowledgment form, which stated that the patient or family had "consented to DNR/DNI."

In the early morning hours of February 15, 1993, decedent's nephew, Phillip Eddleston, appeared at the hospice to visit decedent. Eddleston eventually smothered decedent with a pillow, apparently to effect a "mercy killing." Nurses pulled Eddleston away, but they did not attempt to resuscitate decedent.

Appellant brought a wrongful death action against Riverside and respondent Allied Security Company, alleging that they had been negligent in failing to ensure decedent's safety. Appellant also alleged that Riverside had violated Minnesota's Vulnerable Adult Act. Appellant subsequently moved to amend his complaint to include a claim that Riverside had failed to obtain proper consent before placing decedent on DNR/DNI status. The district court granted summary judgment in favor of respondents on the negligence claim, dismissed the statutory claim, and denied appellant's motion to amend. This appeal results.

### ISSUES

1. Did the district court err in granting summary judgment in favor of respondents on the negligence claim?

2. Did the district court err in dismissing appellant's claim under the Vulnerable Adult Act?

3. Did the district court abuse its discretion in refusing to allow appellant to amend his complaint to include a claim that Riverside failed to obtain proper consent before placing the decedent on DNR/DNI status?

### ANALYSIS

■ 1. Appellant first challenges the summary judgment in favor of respondents on the negligence claim. Summary judgment is proper when there is no genuine issue of material fact and one party is entitled to judgment as a matter of law. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993). On appeal, the evidence must be viewed in the light most favorable to the party against whom judgment was granted. *Id.*

■ The district court based the summary judgment on its ruling that respondents as a matter of law did not owe a legal duty to protect decedent from Eddleston's criminal act. The existence of a legal duty is a question for the court to determine as a matter of law. *K.L. v. Riverside Medical Ctr.,* 524 N.W.2d 300, 302 (Minn.App.1994) (citing *Larson v. Larson,* 373 N.W.2d 287, 289 (Minn. 1985)), *pet. for rev. denied* (Minn. Feb. 3, 1995).

■ A party generally has no duty to control the conduct of a third person to prevent injury to another. *Delgado v. Lohmar,* 289 N.W.2d 479, 483 (Minn.1979). In order to establish such a duty, appellant must show (1) that a special relationship existed between respondents and decedent giving decedent the right to protection, and (2) that the resulting harm was foreseeable. *K.L.,* 524 N.W.2d at 302. Respondents concede the existence of a special relationship with decedent; consequently, the only issue is whether the harm was foreseeable. The issue of foreseeability is generally decided by the court as a matter of law, *id.;* in close cases, however, the issue may be decided by the jury. *Larson,* 373 N.W.2d at 289.

Appellant recites a number of facts supporting his contention that the harm to decedent was foreseeable. These facts were submitted to the district court in the form of police reports, which contained statements made to police by members of the hospice staff. Foremost is evidence that on two occasions, nurses noticed that decedent's oxygen tubing had been pulled from her nose and that her covers had been neatly folded down. The nurses did not investigate the cause of these occurrences, even though decedent was asleep at the time. Decedent generally liked the oxygen to be connected to ease her breathing, and she could not have pulled the covers down herself. In opposition to respondents' motion for summary

judgment, appellant also submitted the report of a psychologist concerning an interview with Eddleston, the affidavit of a security expert discussing the crime rate in the area, and appellant's own affidavit.

■ The facts submitted by appellant in the police reports and psychologist's report may not be considered for purposes of the summary judgment determination because they were not submitted in proper affidavit form.[1] Summary judgment is appropriate

if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law.

Minn.R.Civ.P. 56.03. Consequently, we consider only the evidence submitted by appellant in the form of affidavit or deposition testimony. Whether the evidence concerning decedent's oxygen tube and bed covers would have raised a jury question if properly submitted is a close issue, upon which we express no opinion. Because the other evidence contained in the two affidavits submitted by appellant does not as a matter of law establish that the harm was foreseeable, we conclude that the district court properly awarded summary judgment in favor of respondents on the negligence claim. *See Itasca County Social Servs. v. Milatovich,* 381 N.W.2d 497, 498 (Minn.App.1986) (summary judgment reversed when based on results of a blood test that were not properly submitted in affidavit form); *see also Northway v. Whiting,* 436 N.W.2d 796, 798 (Minn.App. 1989) (summary judgment may be affirmed if there are no genuine issues of material fact and the decision is correct on grounds other than those cited by the district court).

2. Appellant challenges the district court's dismissal of his claim that Riverside violated the Vulnerable Adult Act, Minn.Stat. § 626.557 (1992). The district court dismissed this count for failure to state a claim upon which relief could be granted.

■ The Vulnerable Adult Act requires that a hospital employee report to the proper authority if the employee

has knowledge of the abuse or neglect of a vulnerable adult, has reasonable cause to believe that a vulnerable adult is being or has been abused or neglected, or [if the employee] has knowledge that a vulnerable adult has sustained a physical injury which is not reasonably explained by the history of injuries provided by the caretaker or caretakers of the vulnerable adult.

*Id.,* subd. 3. Decedent, as a resident of Riverside, was a "vulnerable adult" for purposes of the statute. *Id.,* subd. 2(b)(1). "Neglect" means, among other things, "the absence or likelihood of absence of necessary food, clothing, shelter, health care, or supervision for a vulnerable adult." *Id.,* subd. 2(e)(2). The Act imposes absolute liability for damages caused by its violation. *Thelen ex rel. Thelen v. St. Cloud Hosp.,* 379 N.W.2d 189, 194 (Minn.App.1985).

Appellant argues that Riverside's employees violated the Act by failing to report the hospice's unrestricted visitation policy. Appellant specifically contends that the question whether the visitation policy constituted "neglect" under the Act is for a jury. In support of this argument, appellant relies on the crime statistics for the locality and at Riverside. Appellant also points to the affidavit of the security expert, who stated that the high probability of crime and the particular vulnerability of Riverside's residents made the incident foreseeable. Appellant contends that this likelihood of crime required that Riverside implement a more restrictive visitation policy.

Riverside responds that the Act was not intended to apply to visitation policies. In the Act, the legislature set out the public policy that it intended to serve in enacting this statute:

The legislature declares that the public policy of this state is to protect adults who, because of physical or mental disability or dependency on institutional services, are particularly vulnerable to abuse or neglect;

---

1. Although it had "grave doubts" about the admissibility of the information contained in the police reports, the district court chose not to disregard this evidence; the district court then ruled as a matter of law that the harm was not foreseeable.

to provide safe institutional or residential services or living environments for vulnerable adults who have been abused or neglected; and to assist persons charged with the care of vulnerable adults to provide safe environments.

In addition, it is the policy of this state to require the reporting of suspected abuse or neglect of vulnerable adults, to provide for the voluntary reporting of abuse or neglect of vulnerable adults, to require the investigation of the reports, and to provide protective and counseling services in appropriate cases.

Minn.Stat. § 626.557, subd. 1. Riverside argues that the statute's plain language indicates that it was not intended to require hospital employees to report general hospital policies. *See Wegener v. Commissioner of Revenue*, 505 N.W.2d 612, 617 (Minn.1993) (in interpreting a statute, courts should follow its plain meaning and reject a construction leading to an absurd or unreasonable result that departs from the statute's purpose).

■ We conclude that the Act was intended to require the reporting of specific instances of abuse or neglect, not general hospital policies. Moreover, the hospice visitation policy does not constitute an "absence of necessary supervision," as required by the Act. The purpose of the hospice unit is to provide comfort during the last few months of a person's life. In furtherance of that purpose, Riverside allowed unrestricted, 24–hour visitation; more security and more restricted visitation could hinder the hospice's mission.

■ 3. Finally, appellant challenges the district court's denial of his motion to amend the complaint to include a claim that Riverside failed to obtain proper consent before placing decedent on DNR/DNI status. The district court's denial of a motion to amend the complaint will not be reversed absent a clear abuse of discretion. *Hunt v. Universi-*

*ty of Minn.*, 465 N.W.2d 88, 95 (Minn.App. 1991). Such a motion may properly be denied "when the additional alleged claim cannot be maintained." *Id.; see also Pischke v. Kellen*, 384 N.W.2d 201, 204 (Minn.App.1986) (amendment should be denied when it would serve no legal purpose).

In denying the motion to amend, the district court noted that decedent had been placed on DNR/DNI status by her physician before she was admitted to Riverside, and that the acknowledgment signed by appellant upon decedent's admission confirmed that status. The district court further noted that only a patient's physician, and not the hospice, has authority to place a patient on DNR/DNI status.[2]

Appellant argues that the decision concerning DNR/DNI status should be made by the patient herself whenever possible. In appellant's view, the acknowledgment he signed for his mother had no significance. He asserts that because decedent was able to communicate effectively, her personal consent was necessary. Appellant also contends that the nature of the hospice is not relevant to this question because decedent might have chosen to leave the hospice rather than be placed on DNR/DNI status, had she been given the choice.

■ We reject appellant's position. It is clear that decedent was placed on DNR/DNI status before arriving at Riverside, and appellant acknowledged that status when decedent was admitted. Appellant's claim could not be maintained because Riverside was not responsible for decedent's status. Consequently, we hold that the district court did not clearly abuse its discretion in denying the motion to amend the complaint.

## DECISION

Summary judgment for respondents on the negligence claim was appropriate because

---

**2.** The district court also denied the motion on the ground that appellant had not complied with Minn.Stat. § 145.682 (1992), which requires that an affidavit of expert review be filed in a medical malpractice action against a health care provider. *See id.*, subd. 2. The court's reliance on this statute was premature, however, because the appellant still had 60 days in which to submit the affidavit. *See id.*, subd. 6 (claim may be dismissed for failure to comply with the statute "within 60 days after demand for the affidavit").

sufficient evidence that the harm to decedent was foreseeable was not presented to the district court in proper form under rule 56. The district court did not err in dismissing appellant's claim under the Vulnerable Adult Act. The district court did not abuse its discretion in denying appellant's motion to amend his complaint to include a claim based on Riverside's failure to secure decedent's consent to DNR/DNI status.

**Affirmed.**