PAULEN v. SHINNICK.

1. Hospitals—Private Hospitals—Reasonable Care of Patients.
    A patient in a private hospital is clearly entitled to reasonable
    care and attention from the authorities and employees, the
    nature of such care depending upon the attendant circum-
    stances of each case, including the known physical and mental
    condition of the patient.

2. Same—Patient's Attempted Suicide—Negligence—Question
    for Jury.
    Whether or not nurse in charge of patient, suffering from de-
    mentia praecox and placed on third floor of a private hospital,
    was guilty of negligence in leaving unlocked even momentarily
    the screen of a 16" x 36" window, located 45" from the floor,
    held, a question for the jury, where there is evidence that
    superintendent of nurses had been advised that patient had
    previously attempted suicide and needed watching, superintend-
    ent testified that any depressed case is apt to commit suicide,
    and patient sustained injuries by fall from window through
    which she climbed while the nurse's attention was diverted.

3. Same—Verdicts Based on Lay Testimony.
    Verdicts for married woman and her husband for damages for
    injuries she sustained when she fell from an unlocked third
    story window of a private hospital where she had been placed
    for treatment held, sustained by sufficient evidence, notwith-
    standing the fact that expert testimony was not offered by
    plaintiffs, where determination by jury of whether nurse in
    charge of patient was negligent in failing to take some pre-
    caution to prevent the patient's escape did not require advice
    of trained psychiatrists.

4. Costs—Consolidated Cases.
    Costs on appeal are allowed only in the consolidated case where
    two actions, by a husband and his wife, were consolidated and
    heard on one record with the same attorneys in both cases.

Appeal from Wayne; Webster (Clyde I.), J. Submitted October 6, 1939. (Docket Nos. 43, 44, Calendar Nos. 40,703, 40,704.) Decided December 19, 1939.

Separate cases by Samuel Paulen and Ann Paulen against Lillian Shinnick, individually and doing business as The Haven, for damages for personal injuries sustained due to alleged neglect in case of a mental patient. Cases consolidated for trial and appeal. Judgments for plaintiffs. Defendant appeals. Affirmed.

*Vandeveer, Vandeveer & Haggerty (Clinton C. DeWitt,* of counsel), for plaintiffs.

*Douglas, Barbour, Desenberg & Purdy,* for defendant.

BUTZEL, C. J. Mrs. Ann Paulen, because of mental disturbances which did not immediately respond to treatment, was brought on or about January 20, 1937, to "The Haven," a private sanitarium owned and operated by defendant. Mrs. Paulen's husband, brother, and a practical nurse, who accompanied her to the hospital, all testified that Mrs. Clara Beem, the general superintendent of nurses and patients, was informed by them that Mrs. Paulen had made several previous attempts to take her own life, and that she "needed watching." It was explained that it had become necessary to lock the windows to prevent her escape while in a deranged condition. Mrs. Beem, it was claimed, stated that Mrs. Paulen's previous records from Ford Hospital had been sent to "The Haven," and assured them that she would be given full and adequate care.

Accordingly, Mrs. Paulen was given the regular treatment for mental patients at the sanitarium.

While she occupied various rooms, she ultimately was placed on the third floor of the institution where the more depressed patients were segregated from those having a milder form of nervousness. The windows in the third floor room or dormitory were guarded by heavy screens which open inward and were padlocked. The windows, which had no locks, opened outward, so that it was possible to keep the window open although the screen remained locked. The windows were about 36 inches high and 16 to 18 inches wide; the window sash was 45 inches from the floor.

On February 17, 1937, the patients were sewing in the dormitory on the third floor when Mrs. Paulen complained of feeling faint. This was at 4 in the afternoon; she had made similar complaints during the morning. The attendant nurse, Violet Rose, opened the window at her request. She did not, however, lock the screen. Mrs. Paulen then said that she had dropped her thimble under the radiator, which was below the open window. Miss Rose bent over to pick it up, with her back toward Mrs. Paulen. Mrs. Paulen thereupon leaped to a nearby chair, climbed onto the radiator, and jumped out of the window. Although Miss Rose grabbed her skirt, she was unable to restrain her. As a result, Mrs. Paulen fell three stories, sustaining bruises and a fractured wrist for which she brought suit for damages. Samuel Paulen, her husband, instituted a similar suit in his own behalf. The two cases were tried together. Defendant appeals from judgments to each plaintiff rendered after defendant's motion for judgment *non obstante veredicto* was denied.

A jury question was presented. A patient in a private hospital is clearly entitled to reasonable care and attention from the authorities and employees, and the nature of such care will depend

upon the attendant circumstances of each individual case, including the known physical and mental condition of the patient. Plaintiff here was admitted as a mental case, classified by defendant's consulting physician as a sufferer from dementia praecox. Defendant was amply warned of her past suicidal tendencies. During a stay of less than one month at "The Haven," Mrs. Paulen was not known to have been violent or to have attempted to destroy herself, although she had continued morbid and upset. On the day the accident occurred, she was "very depressed," had refused to eat or to remain in bed during the regular rest period, and had cried and walked the floor. Mrs. Beem, defendant's superintendent, testified that "any depressed case is apt to commit suicide." Under these circumstances, it was a question of fact whether defendant's agent, Violet Rose, acted with due prudence in leaving the window and screen unlocked even momentarily and even though she remained in the room. Such a rule is announced by the overwhelming majority of the cases. See *Smith* v. *Simpson,* 221 Mo. App. 550 (288 S. W. 69), a situation strikingly like the present, and *Brawner* v. *Bussell,* 50 Ga. App. 840 (179 S. E. 228); *Mulliner* v. *Evangelischer Diakonniessenverein,* 144 Minn. 392 (175 N. W. 699); *Maki* v. *Murray Hospital,* 91 Mont. 251 (7 Pac. [2d] 228); *Arlington Heights Sanitarium* v. *Deaderick* (Tex. Civ. App.), 272 S. W. 497, and additional decisions collected in 22 A. L. R. 347; 39 A. L. R. 1433.

This does not demand omniscience in the treatment of mental patients. It requires only that reasonable precautions be employed to assure to the patient that care and supervision which the hospital has undertaken to provide. Where there is no intimation that a patient is prone to self-destruction,

the required watchfulness will be less, as illustrated by the authorities cited by defendant. Correspondingly, alertness must be heightened where suicide has been successively threatened in the past.

Determination of whether Miss Rose should have locked the screen before stopping to retrieve plaintiff's fallen thimble, or to have taken some other precaution to prevent plaintiff's escape, is not a question on which a jury requires the advice of trained psychiatrists. *LeFaive* v. *Asselin,* 262 Mich. 443, 446. The verdicts were supported by sufficient evidence notwithstanding the fact that expert testimony was not offered by plaintiffs.

Judgments are affirmed. As the cases were consolidated and heard on one record in this court with the same attorneys in both cases, costs in this court will be allowed only on the consolidated case.

WIEST, BUSHNELL, SHARPE, POTTER, CHANDLER, NORTH, and MCALLISTER, JJ., concurred.