Jeanette KANTER, as Trustee for Harold and Jeanette Kanter, the natural parents and heirs of the deceased Valerie Beth Kanter, Appellant,

v.

METROPOLITAN MEDICAL CENTER, Susan Murray, Respondents.

No. C6–85–1835.

Court of Appeals of Minnesota.

April 15, 1986.

Patrick W. Ledray, Michael J. Minenko, Katz, Lange, Davis & Manka, Ltd., Minneapolis, for appellant.

Sandra J. Skluzacek, Mahoney, Dougherty & Mahoney, Minneapolis, for Metropolitan Medical Center.

Carol A. Hooten, Jardine, Logan & O'Brien, St. Paul, for Susan Murray.

Heard, considered and decided by the court en banc, consisting of POPOVICH, C.J., and FOLEY, HUSPENI, LESLIE, FORSBERG, NIERENGARTEN and RANDALL, JJ.

## OPINION

NIERENGARTEN, Judge.

Jeanette Kanter, as trustee, sues for the wrongful death of her daughter, Valerie, who drowned in a bathtub while a psychiatric patient under the supervision of nurse Susan Murray, an employee of Metropolitan Medical Center (MMC). Kanter argues that only ordinary negligence is required to be shown but the trial court held that Murray's decision to leave a psychiatric patient alone in the bathtub for a few minutes, required professional judgment and therefore a jury could not determine whether negligence had occurred without the aid of an expert witness. In the alternative, Kanter asserts that if expert testimony is required, the trial court abused its discretion by failing to grant Kanter a stay of its order for judgment to allow Kanter time to obtain an expert. Summary judgment was granted respondents Murray and MMC and the trustee appeals. Murray and MMC filed notices of review claiming the trial court erred in allowing the amendment of the named plaintiff to the suit following the appointment of Jeanette Kanter as trustee. We affirm in part, reverse in part and remand for trial.

## FACTS

Valerie Beth Kanter, age 31, with borderline intellectual function and acting out behavior, was admitted to the locked psychiatric ward of MMC on November 12, 1980 for evaluation. She had a long history of treatment by a number of facilities and therapists.

On December 2, Valerie told Susan Murray, a registered nurse, specializing in mental health nursing for about 12 years, that she wanted to take a tub bath. Murray ran the bath, helped Valerie in the tub, helped wash her hair, scrubbed her back and sat and visited with her while she finished her bath. Valerie stated that she wanted to be left alone to relax in the tub for a short time and assured Murray that she would be all right. Murray left the room for a few minutes to help another patient and upon returning a few minutes later, found Valerie lying in the tub with her face in the water.

Valerie died as a result of drowning.

Murray and MMC sought to dismiss the ensuing wrongful death suit because Valerie's parents brought the action in their own names under the wrongful death statute, Minn.Stat. § 573.02 (1980), instead of in the name of a trustee. Kanters then proceeded to have Jeanette Kanter appointed as trustee and amended their original complaint on December 22, 1982 to reflect Jeanette Kanter as the trustee. This amendment was beyond the two year limitation period of Minn.Stat. § 573.02 (1980) and Murray and MMC sought summary judgment. The trial court allowed the amendment of the party to the suit under Rule 17.01 and allowed the amendment to relate back to the initial summons and complaint under Rule 15.03, of the Minnesota Rules of Civil Procedure. But the motion for summary judgment and the request to certify the question as important and doubtful were denied.

A pretrial conference was held on June 17, 1985 during which counsel and the court discussed the trustee's failure to disclose an intent to introduce expert medical testimony on the issues of standard of care, breach of duty and causation. The court scheduled a hearing for June 26 at which time it intended to consider Murray and MMC's summary judgment motions relative to the trustee's failure to procure a medical expert. Murray and MMC assert-

ed that the trustee had failed to present a prima facie case of negligence due to its failure to produce any expert evidence demonstrating Murray's care of Valerie Kanter departed from the appropriate standard of care. The trustee opposed the motions asserting either res ipsa loquitur/or ordinary negligence applies. The trustee also requested a stay of the court's order for judgment in the event the court ruled in Murray and MMC's favor. The trial court entered summary judgment for Murray and MMC dismissing the complaint. The trustee appeals and Murray and MMC's cross-appeals followed.

### ISSUES

1. Did the trial court abuse its discretion in determining that expert testimony was required to assist a jury in determining whether nurse Murray was negligent in choosing to leave Valerie Kanter, an adult psychiatric patient with acting out behavior, alone in the bathtub for a few minutes?

2. Did the trial court abuse its discretion by refusing to grant plaintiff a stay of its order for judgment so that she could obtain a medical expert to testify?

3. Did the trial court err in allowing plaintiff to amend the named plaintiff to the suit?

### ANALYSIS

*1. Expert witness:*

■ At the summary judgment hearing the trustee asserted that the reasonable person standard applies because bathing requires no special knowledge or training and the medical reports, nurses' patient care notes and other sources were sufficient for the jury to "infer negligence" without an expert, based on its own common experience and practical knowledge.

Murray and MMC assert that professional judgment is required by psychiatric nurses in determining the proper amount of supervision they should provide a mental patient.

The trial court ruled that expert evidence was necessary to determine whether nurse Murray met the standard of care, stating:

The ordinary lay jury cannot be allowed to speculate as to what duty a trained specialist has or had under the circumstances and as to whether the actions of Ms. Murray met that standard.

Whether a trial court should allow expert testimony is governed by Rule 702 of the Minnesota Rules of Evidence. That rule states:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

The comments to that rule indicate that whether an expert's opinion may assist the trier of fact is a decision which lies within the discretion of the trial court. This discretion is broad, and should not be reversed, absent a clear abuse of that discretion. *Dunshee v. Douglas*, 255 N.W.2d 42, 47 (Minn.1977).

In a psychiatric ward the potential tendencies of patients suffering from mental illness are not so easily determined by one without special training and knowledge. Even though the deceased was once found lying in the (empty) bathtub several weeks before her death, there is nothing in the record to indicate that she had suicidal tendencies. The advantage of an expert's testimony in this case would be to assist the jury in understanding the nature of the patient's mental illness, whether suicidal tendencies are associated with the patient's specific illness, and finally, given the patient's history, whether the patient may have given notice that she would act on those tendencies. Jury guesswork is to be discouraged if the use of expert testimony can assist the jury in determining these essential facts. *See* Minn.R.Evid. 702.02; *Atwater Creamery v. Western National Mutual Insurance Company*, 366 N.W.2d 271, 279 (Minn.1985). The trial court's decision requiring expert testimony in this case was not an abuse of its discretion.

### 2. Refusal to stay judgment:

▉ Here the trustee had notice at the pre-trial conference that Murray and MMC would move for summary judgment based on her failure to identify an expert witness. When the summary judgment motion was considered nine days later, trustee stood firm in its position and did not produce an expert. The trial court ruled that the trustee needed one and then, without allowing the trustee to go ahead and procure an expert, granted summary judgment.

The trial court abused the discretionary power it possesses under Rule 58.02 of the Minnesota Rules of Civil Procedure in refusing to grant the stay of entry of judgment.[1] A stay would not prejudice Murray and MMC. We reverse the dismissal and remand the case for trial on the strength of the trustee's representations at oral hearing that it has procured an expert witness. The date of trial should be continued to such a date as to allow the usual discovery as to expert witnesses in order to allow both parties adequate time to prepare for trial.

### 3. Amendment of suit:

Murray and MMC asserts the trial court erred in allowing an amendment to the pleadings after the two-year statute of limitations for medical malpractice cases had expired.

▉ The trustee argues this issue is not reviewable by this court since the trial court denied summary judgment on this issue and refused to certify the question as important and doubtful.[2] This court may consider the validity of the amendment since its validity could determine whether the trial court had jurisdiction to hear the cause of action.

The trial court allowed amendment of the plaintiff to the suit under rule 17.01 of the Minnesota Rules of Civil Procedure and noted that under Rule 15.03, the amendment related back to the date of service. Service initially occurred before the two-year statute of limitations passed.

▉ Notes of the Advisory Committee on the 1966 Amendments to Rule 17.03 of the Federal Rules of Civil Procedure state:

Modern decisions are inclined to be lenient when an honest mistake has been made in choosing the party in whose name the action is to be filed—in both maritime and nonmaritime cases. See Levinson v. Deupree, 345 U.S. 648 [73 S.Ct. 914, 97 L.Ed. 1319] (1958); Link Aviation, Inc. v. Downs, 325 F.2d 613 (D.C.Cir.1963) * * * It is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made * * * *

Permitting the amendment and its relation back to commencement of the lawsuit did not prejudice Murray and MMC since the same cause of action was pled and the same facts were involved in the amended complaint as in the original complaint. There is no showing of prejudice as a result of the initial incorrect pleading, even though Murray and MMC assert that since the cause of action for wrongful death is legislatively created by Minn.Stat. § 573.02 (1982), this right to sue should be strictly construed. We agree with the trial court, that this rule should not be so strictly construed.

### DECISION

1. The trial court did not abuse its discretion in determining that an expert witness was required to establish the nurse's duty of care with respect to assisting Ms. Kanter, a psychiatric patient, with her bath.

2. The trial court abused its discretion in refusing to grant appellant a stay of

---

**1.** Rule 58.02 of the Minnesota Rules of Civil Procedure states:

The court may order a stay of entry of judgment upon a verdict or decision for a period not exceeding the time required for the hearing and determination of a motion for new trial * * *.

**2.** Rule 103.04 of the Minnesota Rules of Civil Appellate Procedure indicates this court: "may review any order affecting the order from which the appeal is taken and on appeal from a judgment may review any order involving the merits or affecting the judgment."

entry of judgment in order that she might obtain an expert and proceed to trial. We reverse the dismissal of the suit and remand for trial.

3. The trial court did not abuse its discretion by allowing amendment of the plaintiff to the suit and by allowing the amendment to relate back to the date of the initial pleading.

Affirmed in part, reversed in part and remanded for trial.

FOLEY, FORSBERG and LESLIE, JJ., concur specially and dissent.

FOLEY, Judge (concurring specially and dissenting).

I concur in part and dissent in part. Although I agree that this case should be remanded for trial, it is my view that expert testimony is not required to establish whether or not Susan Murray was negligent in leaving Valerie Kanter alone in the bathtub. Rule 702 is erroneously relied upon by the majority as though the rule permits a trial court in the exercise of its discretion to *require* expert testimony in this case. The rule simply states that a trial court may *permit* or *disallow* expert testimony in a given case. Rule 702 should not be applied here.

Generally, negligence actions involving hospitals and hospital staff may be divided into two categories: (1) those where professional judgment has been rendered concerning proper medical care; and (2) those involving nonmedical, administrative, custodial or routine hospital care. This distinction has been recognized by several jurisdictions. Thus, in *Kastler v. Iowa Methodist Hospital*, 193 N.W.2d 98 (Iowa 1971), the court found:

> [I]n the practice of a profession or trade, the standard is "the skill and knowledge normally possessed by members of that profession or trade in good standing in similar communities." * * * With respect to professional activities of hospitals, we adhere to our rule that the standard is the care "which obtains in hospitals generally under similar circumstances." * * * [H]owever, with respect to nonmedical, administrative, ministerial,

or routine care, we adopt the rule that the standard is such reasonable care for patients as their known mental and physical condition may require.

*Id.* at 101–02 (citations omitted). A similar distinction was recognized in *Miller v. Trinity Medical Center*, 260 N.W.2d 4 (N.D.1977), which cited, *inter alia*, the Minnesota case of *Trepanier v. McKenna*, 267 Minn. 145, 125 N.W.2d 603 (1963). *Miller*, 260 N.W.2d at 6.

The Minnesota Supreme Court has also distinguished between actions which require professional judgment and actions which are merely administrative. In *Swigerd v. City of Ortonville*, 246 Minn. 339, 75 N.W.2d 217 (1956), the court indicated that although a hospital is not liable under a theory of *respondeat superior* for the medical judgments of its physicians, it will be liable for a nurse's negligence in performing "administrative or clerical acts," even though those acts constitute a part of the patient's treatment. The court explained:

> Routine acts of treatment which an attending physician may reasonably assume will be performed in his absence by nurses of a modern hospital as part of their usual and customary duties, and the execution of which does not require specialized medical knowledge, are merely administrative acts for which negligence in their performance is imputable to the hospital.

*Id.* at 346–47, 75 N.W.2d at 222.

In Minnesota, the standard of care of a hospital in performing "routine" care is that of "reasonable care for the protection and well-being of the patient commensurate with its actual or constructive knowledge of the patient's physical and mental condition." *Trepanier*, 267 Minn. at 149, 125 N.W.2d at 606, citing, *inter alia, Swigerd* and *Quick v. Benedictine Sisters Hospital Association*, 257 Minn. 470, 102 N.W.2d 36 (1960). Although the Minnesota Supreme Court has not expressly indicated that expert testimony is unnecessary to establish the standard of care in these routine care hospital cases, it is important to

note that the standard in Minnesota is remarkably similar to that in *Kastler,* where expert testimony was held unnecessary in routine care cases.

The following language from *Sylvester v. Northwestern Hospital of Minneapolis,* 236 Minn. 384, 386–87, 53 N.W.2d 17, 19 (1952), would also support a conclusion that expert testimony is not required in this type of case:

> As to the danger of self-injury or as to the danger reasonably to be anticipated from the acts of another person under the hospital's control, the reasonable care to be exercised must always be in proportion to the patient's inability to look after his own safety. The standard of reasonable care is that which would be exercised by a *reasonably prudent person* under the same or similar circumstances and does not require the taking of precautionary measures to avert a danger which a *reasonable person* would not anticipate as likely to happen. (emphasis supplied; footnotes omitted)

The *Sylvester* court specifically refers to a reasonable person standard rather than a reasonable nurse standard. In the context of the present situation, the *Swigerd* and *Sylvester* decisions suggest that a jury may determine without the benefit of expert testimony whether Murray's actions were those of a reasonable and prudent *person* if those actions were merely routine and did not require specialized medical knowledge.[1]

The question whether a nurse's duties should be characterized as professional or routine/ministerial depends upon the nature of the act. *Swigerd,* 246 Minn. at 344, 75 N.W.2d at 221. A review of cases involving similar fact situations indicates that Murray's responsibility for bathing Kanter should be characterized as routine, rather than professional.

In *Kastler,* the Iowa Supreme Court held that expert testimony was unnecessary to establish whether a nurse's aide was negligent in allowing a psychiatric patient to take a shower unattended when the patient had previously reported that she had not been feeling well. *Kastler* reasoned that showers were "routine" and "did not lose their character as routine care because they were employed to make the psychiatric patients feel better." *Kastler,* 193 N.W.2d at 102.

The *Trepanier* decision rendered by the Minnesota Supreme Court also involved somewhat similar facts. There, a diabetic patient with a gangrenous foot was assisted by a practical nurse and a nurse's aide to a portable commode and was told to let them know "when he was done." The patient attempted to get back to his bed alone and fell. The court in *Trepanier* applied the "routine care" standard to those facts.

A hospital employee's actions were also found to be "routine" in *Swigerd,* where the administration of heat lamp treatment resulted in burns to a patient. In *Quick v. Benedictine Sisters Hospital Association,* 257 Minn. 470, 102 N.W.2d 36 (1960), a hospital's supervision of a patient following electric shock treatments was held to be routine. (The patient in *Quick* fell out of bed, allegedly due to the negligence of hospital personnel.) In *Miller,* the North Dakota Supreme Court found "routine" a hospital's conduct in allowing a somewhat confused 74-year-old patient to smoke in bed, although he had been taking a mild sedative.

In *Paulen v. Shinnick,* 291 Mich. 288, 289 N.W. 162 (1939), the Michigan Supreme Court was presented with a case where a mental patient had distracted a nurse by asking her to retrieve a fallen thimble and had then jumped out of an unlocked window. The court determined that whether the nurse had acted negligently by unlocking the window at the patient's request and failing to lock the window before retrieving

---

1. *See also* this court's recent decision in *Roettger v. United Hospitals of St. Paul, Inc.,* 380 N.W.2d 856 (Minn.Ct.App.1986), where a hospital patient had been attacked by an intruder. We held in *Roettger* that expert testimony was unnecessary to establish whether hospital security procedures were adequate, citing the reasonable care standard of *Sylvester v. Northwestern Hospital of Minneapolis,* 236 Minn. 384, 53 N.W.2d 17 (1952).

the thimble were not questions upon which the jury required the advice of experts. *Paulen* was cited with approval on a related issue in *Quick.*

The above cases demonstrate that the supervision of Kanter's bath was also a routine administrative type of duty; therefore, expert testimony is not necessary to establish whether or not Murray was negligent in leaving Kanter alone for a few moments. Contrary to the argument of the majority, the jury would not be required to engage in "guesswork" to determine whether Murray was negligent; rather, it may be assumed that testimony will be received by way of relevant hospital records and from hospital staff and Murray herself. From this information the jury would be able to determine for itself what should have constituted reasonable care in proportion to Kanter's inability to look after herself and whether that care was rendered.

I would therefore remand for trial without requiring that expert testimony be offered to establish Murray's negligence.

FORSBERG, Judge (concurring specially and dissenting).

I join in the special concurrence and dissent of Judge Foley.

LESLIE, Judge (concurring specially and dissenting).

I join in the special concurrence and dissent of Judge Foley.