Patty C. KAISER, et al., Appellants,

v.

MEMORIAL BLOOD CENTER OF MINNEAPOLIS, INC., and the American Red Cross, Respondents.

No. C5-91-636.

Supreme Court of Minnesota.

July 24, 1992.

Rehearing Denied Oct. 19, 1992.

Sharon L. Van Dyck, James R. Schwebel, Schwebel, Goetz & Sieben, P.A., Minneapolis, and Fred G. Meis, Sarah Jane Burgess, San Francisco, Cal., for appellants.

Kay Nord Hunt, David J. Dosedel, Lommen, Nelson, Cole & Stageberg, Minneapolis, for Memorial Blood Center of Mpls.

William P. Studer, Patrick C. Diamond, Oppenheimer, Wolff & Donnelly, St. Paul, (Bruce M. Chadwick, Julia Erickson, Arnold & Porter, and Edward L. Wolff, American Red Cross, Assoc. Gen. Counsel, Washington, D.C., of counsel), for Red Cross.

WAHL, Justice.

This case comes to us with two questions certified by the United States Court of Appeals for the Eighth Circuit. 938 F.2d 90. We are asked to clarify Minnesota law regarding the appropriate statute of limitations that applies to an action alleging negligence against a blood bank in the screening of blood and blood products and, if the two-year statute for medical malpractice actions applies, when the statute of limitations begins to run.

The suit was filed in Hennepin County District Court on September 1, 1988, by Patty Kaiser and her husband, James Kaiser. The complaint alleges that Patty Kaiser was infected with the human immunodeficiency virus (HIV) through a blood transfusion she received in 1984. The complaint named Memorial Blood Center of Minneapolis (Memorial) and the American National Red Cross (Red Cross) as defendants and alleged that Memorial and Red Cross were negligent in selecting donors and in screening donated blood, and that they negligently failed to warn the public of the risk of HIV infection through blood transfusion.

Red Cross removed the case to federal district court on the basis of its congressional charter. Federal District Judge Donald Alsop granted the defendants' motions for summary judgment, ruling that the plaintiffs' claims were barred by Minnesota's two-year statute of limitations for medical malpractice actions. *Kaiser v. Memorial Blood Center, Inc.*, 721 F.Supp. 1073, 1077 (D.Minn.1989). The Kaisers appealed to the United States Court of Appeals for the Eighth Circuit challenging federal court subject matter jurisdiction and the granting of the motions for summary judgment. The court of appeals affirmed the district court on the question of subject matter jurisdiction but certified to this court the following questions: [1]

(1) Whether the two-year statute of limitations, Minn.Stat.Ann. § 541.07(1), or the six-year statute of limitations, *id.* § 541.05, applies to actions alleging negligence on the part of blood banks in the screening of blood or blood products?

(2) If the two-year statute of limitations applies to negligence actions against blood banks, is the running of the statutory period in cases alleging HIV-infection tolled by application of the special discovery exception for asbestos-related wrongful death actions adopted in *DeCosse v. Armstrong Cork Co.* [2]?

## I.

The district court granted summary judgment for the defendants on the following undisputed facts which supply the context within which we answer the certified questions:

Patty Kaiser had a tubal ligation at Fairview Southdale Hospital in Minneapolis on November 7, 1984. The next day, she received two units of packed red blood cells. She was discharged from the hospital on November 12 and received no further medical treatment relating to the surgery.

The blood components used in the transfusion were collected by the St. Paul Region of the American National Red Cross. The blood given to Patty Kaiser had been donated by two donors, one of whom it was later learned was infected with HIV, the virus that causes Acquired Immunodeficiency Syndrome (AIDS). The two units of blood were sent by Red Cross to Memorial under terms of a reciprocal blood-sharing agreement. Memorial stored the blood until it was sold to Fairview Southdale Hospital for Patty Kaiser's transfusion.

In the spring of 1987, after viewing a television program about AIDS, Patty Kaiser had her blood tested for HIV. On April 7, 1987, she learned that her blood had tested positive. She and her husband filed this action on September 1, 1988.

The Director of Blood Services for the St. Paul Region of Red Cross Blood Services is a licensed physician certified in clinical pathology and the subspecialty of blood banking. The St. Paul Region Red Cross employs five other licensed physicians, one of whom is responsible for advising other doctors about transfusions for particular patients. The St. Paul Region also employs nurses and other medical personnel, all of whom are supervised by physicians.

Memorial is licensed by the Food and Drug Administration (FDA), registered with the Center for Disease Control and the Health Care Finance Administration, and accredited by the American Association of Blood Banks. Memorial's director is a

---

**1.** Pursuant to Minn.Stat. § 480.061 (1990).

**2.** 319 N.W.2d 45 (Minn.1982).

licensed physician certified in clinical pathology and blood banking. He establishes scientific and medical policies for Memorial that conform with federal regulations and blood banking industry guidelines. Memorial also employs registered nurses and laboratory technologists.

During 1984, Red Cross personnel regularly screened donors for HIV risk factors and tested collected blood for various factors pursuant to its license from the FDA. When Memorial received blood from Red Cross, its laboratory technologists retested the blood for blood group and Rh type, but apparently not for other factors, before distributing the blood to hospitals for transfusions.

## II.

The statute of limitations for most negligence actions in Minnesota is six years. Minn.Stat. § 541.05. However, certain kinds of actions against certain defendants must be commenced within a shorter period of time. Minn.Stat. § 541.07 provides, in relevant part:

> [T]he following actions shall be commenced within two years:
>
> (1) * * * [A]ll actions against physicians, surgeons, dentists, other health care professionals as defined in section 145.61, and veterinarians as defined in chapter 156, hospitals, [and] sanitariums, for malpractice, error, mistake or failure to cure, whether based on contract or tort * * *.

*Id.*

To determine which statute controls, the court must determine both whether the defendant is included in those listed in the two-year statute and whether the action is for "malpractice, error, mistake, or failure to cure." The Kaisers argue that the six-year statute applies because this is a common-law negligence action, not malpractice, and because blood banks are not included as protected defendants in the two-year statute. The blood banks argue that the Kaisers' complaint alleges medical malpractice. They also assert that the two-year statute applies to them as defendants in two ways: directly because blood banks

are "other health care professionals" and vicariously for the medical malpractice of their physician employees.

The reference to "other health care professionals as defined in section 145.61" was added to the statute in a 1982 amendment, Act of Mar. 22, 1982, ch. 546 § 2, 1982 Minn.Laws 1049, but section 145.61 fails to expressly define "other health care professionals." The meaning of that phrase must be derived from the following definitions that are found in section 145.61:

> Subd. 2. **Professional.** "Professional" means a person licensed or registered to practice a healing art under chapter 147 [physician, surgeon, or osteopath], or 148 [chiropractor, registered nurse, licensed practical nurse, midwife, optometrist, physical therapist, and psychologist], to practice dentistry under chapter 150A, to practice as a pharmacist under chapter 151, or to practice podiatry under chapter 153.
>
> Subd. 3. "Professional service" means service rendered by a professional of the type such professional is licensed to perform.
>
> Subd. 4. "Health care" means professional services rendered by a professional or an employee of a professional and services furnished by a hospital, sanitarium, nursing home or other institution for the hospitalization or care of human beings.

Minn.Stat. § 145.61 (1990).

Legislative history indicates that the 1982 amendment was proposed and passed to provide to "other health care professionals" the same two-year exposure to malpractice liability afforded physicians, surgeons, dentists, hospitals, and sanitariums prior to the amendment. Previously, the two-year statute of limitations applied only to malpractice actions against the listed categories of defendant, but the six-year statute applied to all other health care workers, even if they were involved in the same alleged acts of malpractice with a physician or surgeon. Thus, prior to the 1982 amendment, five years after a negligent surgery, a victim of a negligent surgery could sue the operating room nurse

but not the surgeon. This disparity struck the legislature as unfair and the amendment was passed to correct this apparent inequity.[3] It is significant, however, that the legislature did not extend coverage to all "health care professionals" generically, but only to those specifically listed in the amended statute.

■ Because blood banks are not expressly mentioned as a class of defendant governed by the two-year limitation in Minn.Stat. § 541.07(1), they are protected as corporate entities only if they are a necessary subset of any of the classes of defendants that are specified. The category of "hospitals and sanitariums" is the only one that refers to corporate entities as opposed to natural persons. The specification of two specific institutional defendants, however, suggests that the legislature meant by this category to apply the two-year statute of limitations to only the institutions listed and not to all institutions providing health care such as nursing homes, free-standing medical laboratories, or blood banks.[4]

■ The class of defendants under which the blood banks claim direct coverage of the two-year statute is "other health care professionals." This argument fails. In the first place, the operative term "professionals" indicates that defendants intended to be included under the term "other health care professionals" must be persons licensed or registered to practice a healing art under various licensing statutes. Minn.Stat. § 145.61, subd. 2.[5] These licensing statutes refer exclusively to individual human beings and not to corporations such as Memorial and Red Cross. We must therefore conclude that the defendant blood banks are not "professionals" under the statutory definition.

Furthermore, the modifying term "health care" refers to "professional service" meaning "services furnished by a hospital, sanitarium, nursing home or other institution for the hospitalization or care of human beings." Minn.Stat. § 145.61, subd. 4. The blood banks argue that they are "institution[s] for the hospitalization or care of human beings" and are therefore covered by the statute. This argument would be persuasive except the rule of *ejusdem generis* requires "that where general words follow an enumeration of persons or things, by words of a particular and specific meaning, the general words are construed to embrace only persons or things of the same general kind or class as those before enumerated." Francis J. McCaffrey, *Statutory Construction* § 16, at 41 (1953); *see also* Minn.Stat. § 645.08(3); *State v. Suess*, 236 Minn. 174, 182, 52 N.W.2d 409, 415 (1952). By listing hospitals, sanitariums, and nursing homes before the more general "other institutions for the hospitalization or care of human beings," the legislature has indicated an intent to include only those institutions that share common characteristics with the specific institutions listed. While blood banks do, in a sense, provide care for human beings, they do not share the obvious characteristic of being primarily in-patient, comprehensive health care facilities that such institutions as hospitals, sanitariums, and nursing homes do. Because blood banks are not "professionals" and because they are not the same kind of institution for the care of human beings as those listed in the statute, we hold that blood banks as entities are not "other health care professionals" and are not included under Minn.Stat. § 541.07(1), the two-year statute of limitations.

---

3. The legislative debates and committee hearings also revealed a concern to reduce, or prevent a rise in, malpractice insurance rates for the additional professions.

4. Although a hospital or sanitarium may operate a blood bank which would be covered by the two-year statute, Memorial and Red Cross are not affiliated with a hospital or sanitarium and thus are not included in this category of defendants.

5. The enumerated professions are: physicians, surgeons, and osteopaths [chapter 147]; chiropractors, registered nurses, licensed practical nurses, midwives, optometrists, physical therapists, and psychologists [chapter 148]; dentists [chapter 150A]; pharmacists [chapter 151]; and podiatrists [chapter 153].

■ Alternatively, the blood banks argue that even if they are not directly protected as entities by the two-year statute, they may claim the two-year statute because the alleged negligence was committed by their physician employees and liability is alleged on a theory of respondeat superior. The trial court held that because *"any* alleged negligent acts or omissions on the part of the defendants occurred through its doctors and nurses who were responsible for setting the blood banks' policies and carrying out [its] activities" the two-year statute applied. *See* 721 F.Supp. at 1076 (emphasis added).

We agree that if the blood banks' employees' alleged liability was based on respondeat superior for the "malpractice, error, mistake or failure to cure" of their "health care professional" employees they are permitted to assert the employees' statute of limitations defenses and the two-year statute would apply. *See Grondahl v. Bulluck,* 318 N.W.2d 240, 244 (Minn. 1982). We do not agree, however, that every negligent act or omission by the blood banks' physician employees constitutes "malpractice, error, mistake or failure to cure" and thus is covered by the two-year statute. The term "professional service," defined in Minn.Stat. § 145.61, subd. 3, included in the definition of "health care" in Minn.Stat. § 145.61, subd. 4, which together form the statutory source for determining what "other health care professionals" are covered by the two-year statute of limitations, refers to "service[s] rendered by a professional *of the type such professional is licensed to perform." Id.* § 145.61, subd. 3 (Emphasis added.) There is thus a distinction between malpractice by professionals acting pursuant to their professional licensure from negligence based upon conduct for which a professional license is not required.[6]

The blood banks are not covered by the two-year statute merely because those in charge happen to be physicians, but only if those physicians are performing functions for which their professional licensure is required.[7] The administrative and policy-making functions of blood banks do not have to be performed by licensed physicians or nurses, however. FDA regulations governing licensed blood banks at the time required that only two functions be performed by physicians (or by persons acting under a physician's supervision): The selection of individual donors and the drawing of blood. 21 C.F.R. §§ 640.3, 640.4 (1984). The regulations do specify that a "blood establishment" shall be under the direction of a "designated, qualified person" who must "have an understanding of the scientific principles and techniques involved in the manufacture of blood products," but the designated director is not expressly required to be a licensed physician. *Id.* § 606.20. Other personnel responsible for the collection, processing, testing, storage or distribution of blood products must similarly have appropriate training and experience, including professional training if necessary, but are not required to be licensed professionals.

■ Thus, it does not appear on the record before us that the plaintiffs' action is based on the malpractice of the blood banks' health care professional employees acting pursuant to their licenses, though the complaint standing alone might arguably be construed to allege such negligence. Neither party claims that some doctor or nurse carelessly selected an individual donor or carelessly performed or omitted some prescribed test. Nor is there any evidence that either blood bank specifically consulted with Patty Kaiser's attending physicians regarding her transfusion. Rather, the plaintiffs claim that the blood banks should have had in place different blood bank industry standards for the selection of donors and the screening of collected blood and the blood banks, for their

---

6. We acknowledge that the trial court's holding was a plausible interpretation of the holding in *Koderick v. Snyder Bros. Drug, Inc.,* 413 N.W.2d 856, 859 (Minn.Ct.App.1987). To the extent *Koderick* is inconsistent with this opinion, however, it is hereby overruled.

7. Conduct constituting the practice of medicine for which a license is required is defined in Minn.Stat. § 147.081, subd. 3.

part, claim that they had installed and were observing all proper industry standards known to the state of the art at the time they collected and screened the blood given to Patty Kaiser. In essence, then, this case is about the administrative and standard-making functions of the blood bank industry for which a physician's or nurse's professional license is not required. Therefore, the action is not based on respondeat superior for medical malpractice but for common law negligence by the corporate entities and is thus governed by the six-year statute of limitations, Minn.Stat. § 541.05.[8]

Our answer to the first certified question, therefore, is that the six-year statute of limitations, Minn.Stat. § 541.05, applies to this action alleging negligence on the part of the blood banks in the selection of blood donors and screening of blood products. We need not reach the second certified question.

---

**8.** Other courts have applied the distinction between corporate negligence in policymaking and medical malpractice in similar circumstances. *See, e.g., Miles Laboratories v. Doe,* 315 Md. 704, 741, 556 A.2d 1107, 1125 (1989) (holding claims against a blood bank "are not for medical malpractice of its employees, but for *the organization's failure to adopt proper testing and screening procedures*"); *Bleiler v. Bodnar,* 65 N.Y.2d 65, 72, 479 N.E.2d 230, 235, 489 N.Y.S.2d 885, 890 (1985) (a hospital's failure to adopt and prescribe proper procedures and regulations differs from medical malpractice); *Sweeney v. Presbyterian/Columbia Presbyterian Medical Center,* 763 F.Supp. 50, 51–53 (S.D.N.Y. 1991) (claim that a hospital failed to employ procedures which would have adequately insured that blood it obtained for transfusions was not toxic is not of a nature that calls into question the medical decisions made regarding plaintiff's treatment and therefore is not medical malpractice).