*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A25-0998**

Anjela Carpenter,
Appellant,

vs.

Meridian Behavioral Health LLC,
Respondent.

**Filed June 22, 2026
Affirmed
Bond, Judge**

Washington County District Court
File No. 82-CV-25-639

Jeremy L. Brantingham, Brantingham Law Office, Minneapolis, Minnesota (for appellant)

Steven R. Schwegman, Chad A. Staul, Quinlivan & Hughes, P.A., St. Cloud, Minnesota (for respondent)

Considered and decided by Bond, Presiding Judge; Reyes, Judge; and Harris, Judge.

## NONPRECEDENTIAL OPINION

**BOND**, Judge

Appellant challenges the dismissal of her complaint for failure to comply with the expert-review affidavit requirements of Minn. Stat. § 145.682 (2024). We affirm.

## FACTS

Respondent Meridian Behavioral Health LLC (Meridian) owns and operates Cedar Ridge Treatment Center (Cedar Ridge), a men's treatment facility for substance abuse and

mental-health concerns. Appellant Anjela Carpenter's son was a resident of, and received care at, Cedar Ridge. In March 2022, Carpenter's son was found unconscious in his room at Cedar Ridge next to an empty bottle of ammonium chloride, a cleaning solution. Carpenter's son was brought to the hospital where physicians noted that "[h]e was in critical condition as the result of ingestion of ammonium chloride." Carpenter's son died in the hospital.

In October 2024, Carpenter commenced this action against Meridian, alleging that Meridian owed a duty of reasonable care to Cedar Ridge residents, including her son, "for the safety of residents on its premises, to ensure that the facility was clear of cleaning solutions and/or other toxic cleaning substances." The complaint alleged that Meridian breached this duty by: (1) failing to maintain Cedar Ridge in a reasonably safe condition, (2) creating an unreasonable risk of harm to residents by allowing cleaning solutions and toxic cleaning substances to remain on the floor, (3) failing to store the cleaning solutions and toxic cleaning substances properly in a manner that caused danger to Carpenter's son, and (4) otherwise failing to exercise due care. The complaint asserted that Carpenter's son died from consuming ammonium chloride as a result of Meridian's negligence. Carpenter did not serve an expert-review affidavit with the complaint.

In its answer, Meridian asserted that Carpenter failed to comply with affidavit requirements for medical-malpractice cases under Minn. Stat. § 145.682. Meridian's answer included a demand for strict compliance with the affidavit requirements, which by operation of statute gave Carpenter 60 days, until January 6, 2025, to produce an affidavit of expert review. Minn. Stat. § 145.682, subd. 6(a).

In December, the parties agreed to a joint discovery plan. Relevant here, the discovery plan stated: "this is a medical malpractice case, expert testimony will be required and expert discovery shall be governed by Minn. Stat. § 145.682 and the Rules of Civil Procedure."

In late-January 2025, Meridian moved to dismiss Carpenter's claim under section 145.682 based on Carpenter's failure to timely serve an expert-review affidavit. In February, Carpenter's attorney filed an affidavit of expert review pursuant to section 145.682 stating that he had reviewed the facts of the case with an expert and that, in the expert's opinion, Meridian deviated from the applicable standard of care and, as a result, injured Carpenter's son. After a hearing, the district court granted Meridian's motion to dismiss, determining that Carpenter brought a medical-malpractice claim requiring expert testimony to establish a prima facie case and that Carpenter's affidavit of expert review was untimely.

Carpenter appeals.

## DECISION

Carpenter argues that the district court erred in dismissing her claim against Meridian for failing to meet the expert-affidavit requirements set forth in Minn. Stat. § 145.682. In general, we review a district court's decision on a motion to dismiss de novo. *Hebert v. City of Fifty Lakes*, 744 N.W.2d 226, 229 (Minn. 2008). But we review a district court's dismissal of a claim for failure to meet the requirements of Minn. Stat. § 145.682 for an abuse of discretion. *Daulton v. TMS Treatment Ctr., Inc.*, 2 N.W.3d 331, 336 (Minn. App. 2024). "A district court abuses its discretion by making findings of fact that are

3

unsupported by the evidence, misapplying the law, or delivering a decision that is against logic and the facts on record." *Id.* at 336-37 (quotation omitted).

The Minnesota legislature enacted section 145.682 to "eliminat[e] nuisance medical malpractice lawsuits by requiring plaintiffs to file affidavits verifying that their allegations of malpractice are well-founded." *Stroud v. Hennepin Cnty. Med. Ctr.*, 556 N.W.2d 552, 555 (Minn. 1996). The statute governs actions "alleging malpractice, error, mistake, or failure to cure, whether based on contract or tort, against a health care provider." Minn. Stat. § 145.682, subd. 2.[1] In such cases, a medical-malpractice plaintiff must serve two affidavits upon the defendant: (1) an affidavit of expert review under subdivision 3, and (2) an affidavit identifying experts to be called under subdivision 4. *Id.* Only the first affidavit of expert review is at issue in this appeal.

An affidavit of expert review must be served on the defendant "with the summons and complaint." *Id.*, subd. 2(1). The affidavit of expert review is made by the plaintiff's attorney and, as relevant here, must state that

> the facts of the case have been reviewed by the plaintiff's attorney with an expert whose qualifications provide a reasonable expectation that the expert's opinions could be admissible at trial and that, in the opinion of this expert, one or

---

[1] On appeal, Carpenter does not dispute that Meridian is a "health care provider" within the meaning of the statute. *See* Minn. Stat. §§ 145.682, subd. 1 (defining "health care provider" as "a physician, surgeon, dentist, or other health care professional or hospital, including all persons or entities providing health care as defined in section 145.61, subdivisions 2 and 4"), .61, subd. 4 (defining "health care" as "professional services rendered by a professional or an employee of a professional and services furnished by a hospital, sanitarium, nursing home or other institution for the hospitalization or care of human beings") (2024).

> more defendants deviated from the applicable standard of care
> and by that action caused injury to the plaintiff[.]

Minn. Stat. § 145.682, subd. 3(1).

If a plaintiff fails to timely provide the required affidavit of expert review, a defendant may demand strict compliance with the statute. *See* Minn. Stat. § 145.682, subd. 6(a). Once a demand is made, a plaintiff has 60 days to produce an affidavit of expert review. *Id.* Failure to timely comply with the demand "results, upon motion, in mandatory dismissal with prejudice of each cause of action as to which expert testimony is necessary to establish a prima facie case." *Id.* Minnesota courts strictly enforce these statutory requirements. *Broehm v. Mayo Clinic Rochester*, 690 N.W.2d 721, 726 (Minn. 2005) ("[P]laintiffs must adhere to strict compliance with the requirements of Minn. Stat. § 145.682.").

## I.   The district court did not abuse its discretion by dismissing Carpenter's claim because Carpenter failed to comply with the affidavit requirements of section 145.682.

Carpenter challenges the district court's dismissal of her claim against Meridian, arguing that she was not required to provide an affidavit of expert review under section 145.682 because she alleged common-law negligence rather than medical malpractice. Alternatively, Carpenter argues that, even if her complaint alleged a medical-malpractice claim, expert testimony is not required to establish a prima facie case.

Application of Minn. Stat. § 145.682, subd. 2, is limited "to those medical malpractice actions as to which expert testimony is necessary to establish a prima facie case." *Tousignant v. St. Louis County*, 615 N.W.2d 53, 58 (Minn. 2000) (quotation

5

omitted). To establish a prima facie medical-malpractice claim, a plaintiff must prove "(1) the standard of care recognized by the medical community as applicable to the particular defendant's conduct, (2) that the defendant in fact departed from that standard, and (3) that the defendant's departure from the standard was a direct cause of the patient's injuries." *Dickhoff ex rel. Dickhoff v. Green*, 836 N.W.2d 321, 329 (Minn. 2013) (quotation omitted). Generally, proving all three elements in a medical-malpractice case requires expert testimony to help the jury understand "complex issues of science or technology." *Tousignant*, 615 N.W.2d at 59. "An exception to this rule applies when the alleged negligent acts are within the general knowledge or experience of laypersons." *Mercer v. Andersen*, 715 N.W.2d 114, 122 (Minn. App. 2006). But this exception only applies in "rare cases." *Sorenson v. St. Paul Ramsey Med. Ctr.*, 457 N.W.2d 188, 191 (Minn. 1990).

Whether section 145.682 applies is an issue of statutory interpretation, which we review de novo. *Id.* at 190; *see Tousignant*, 615 N.W.2d at 58 ("[I]nterpretation of the requirements of section 145.682 requires statutory interpretation, a question of law, which this court reviews de novo.").

## A. Carpenter brought an action for medical malpractice.

Carpenter argues that the requirements of Minn. Stat. § 145.682, subd. 2, do not apply because her claim sounds in ordinary negligence, not medical malpractice. A medical-malpractice action "typically involve[s] negligent conduct that is connected to a person's professional licensure." *Paulos v. Johnson,* 597 N.W.2d 316, 320 (Minn. App. 1999), *rev. denied* (Minn. Sept. 28, 1999); *see Kaiser v. Mem'l Blood Ctr. of Minneapolis*

6

*Inc.*, 486 N.W.2d 762, 767 (Minn. 1992) (distinguishing "malpractice by professionals acting pursuant to their professional licensure from negligence based upon conduct for which a professional license is not required"). Carpenter contends that, because the ammonium chloride was most likely left out by non-medical personnel for a non-medical purpose, the allegedly negligent conduct did not require a professional license.

To evaluate whether Carpenter's complaint alleges a medical-malpractice claim, we turn to Minnesota caselaw. In *Kaiser*, the supreme court concluded that a plaintiff's claims against blood-bank physicians for negligent blood-donor selection and blood screening were based on common-law negligence. *Id.* at 767-68. The supreme court explained that the allegations did not involve medical malpractice because the physicians' actions implicated the administrative functions of the blood-bank industry for which a professional license was not required. *Id.* at 768; *see also Blatz v. Allina Health Sys.*, 622 N.W.2d 376, 385 (Minn. App. 2001) (concluding that paramedics' use of an address to locate a home when responding to an emergency was ordinary negligence because it did not implicate professional judgment), *rev. denied* (Minn. May 16, 2001). In contrast, in *Henderson v. Allina Health System*, this court relied on *Kaiser* to conclude that hospital employees' decision not to raise a patient's bed rails was medical malpractice because it required professional judgment. 609 N.W.2d 7, 10 (Minn. App. 2000), *rev. denied* (Minn. June 13, 2000). We reasoned that, because the employees were acting pursuant to the hospital's written policy requiring them to raise a patient's bed rails "as necessary . . . based on [a] patient's status," their actions required an understanding of the patient's medical needs, constituting professional judgment. *Id.* at 9.

7

Here, Carpenter's complaint alleged that Meridian owed a duty of reasonable care to her son as a resident of Cedar Ridge "to ensure that the facility was clear of cleaning solutions and/or other toxic cleaning substances" and that Meridian breached that duty in leaving out those cleaning supplies despite knowing that they "created an unreasonable risk of harm to residents of the treatment facility." The district court determined that Carpenter brought a medical-malpractice claim because whether Meridian employees had a duty to remove all toxic cleaning supplies from the premises depended on Carpenter's son's "medical history and status as a patient recovering from addiction." We agree with the district court.

As was the case with the hospital employees' decision in *Henderson*, Meridian's determination about whether certain everyday items were safe to leave unsecured around Carpenter's son as a resident at a substance-abuse treatment center depended on his medical diagnosis and treatment plan. *Id.*; *see also Kanter v. Metro. Med. Ctr.*, 384 N.W.2d 914, 915-16 (Minn. App. 1986) (concluding that an employee's decision to leave a psychiatric patient unsupervised in the bathtub for a few minutes required professional judgment), *rev. denied* (Minn. Apr. 15, 1986). And unlike the straightforward act of locating an address in *Blatz*, the act of separating in-patient residents from potentially harmful substances requires an understanding of each resident's medical needs and status and, as such, it implicates professional judgment. We thus conclude that the district court properly determined that Carpenter brought an action for medical malpractice.

8

**B.    Carpenter's claim requires expert testimony to establish a prima facie case of medical malpractice.**

Carpenter argues that, even if she brought a medical-malpractice claim, the requirements of section 145.682 do not apply because expert testimony is not required to establish a prima facie case.  Carpenter asserts that Meridian's "alleged negligent acts are within general knowledge or experiences of lay persons" because it is common knowledge "that a person with a drug addiction, who is confused and medicated, will likely abuse any digestible product that is left unattended."

"In order to prove medical negligence, a plaintiff usually must offer expert testimony with respect to the standard of care and establish that the defendant doctor departed from that standard."  *Sorenson*, 457 N.W.2d at 191; *see also Haile v. Sutherland*, 598 N.W.2d 424, 428 (Minn. App. 1999) ("[E]xpert testimony is necessary to support all but the most obvious medical malpractice claims.").  However, "[i]f lay jurors can understand all elements of the claim, including the standard of care, breach of that standard, and causation, without expert testimony, then expert testimony is unnecessary."  *Daulton*, 2 N.W.3d at 339.  Only in "rare cases" is expert testimony unnecessary.  *See Sorenson*, 457 N.W.2d at 191.

Citing *Tousignant*, Carpenter maintains that this is one of the "rare cases" that does not require expert testimony to establish a prima facie medical-malpractice claim.  615 N.W.2d at 58 (quotation omitted).  In *Tousignant*, the plaintiff was admitted to a nursing home while she was recovering from hip surgery.  *Id.* at 55-56.  The plaintiff's patient form specifically noted that the plaintiff needed to wear a "vest restraint on at all times" to

9

prevent her from falling. *Id.* at 56. Nonetheless, the plaintiff fell and re-fractured her hip after nursing home staff left her unattended and unrestrained. *Id.* The supreme court concluded that expert testimony was unnecessary to establish a prima facie case of medical malpractice because "[i]t is a matter of common knowledge and experience that an elderly person, confused and recovering from a fractured hip, who was likely to attempt to walk without assistance if left unattended, also likely would fall" and "[t]hat a fall by such a person would result in . . . injuries." *Id.* at 60.

*Tousignant* is factually distinguishable from this case. Here, unlike in *Tousignant*, the parties disagree on the standard of care Meridian owed to Carpenter's son as a resident of Cedar Ridge. Whether Meridian breached the applicable standard of care is also disputed. *See Daulton*, 2 N.W.3d at 340 (noting that when expert testimony is not required in a medical-malpractice case it is generally because "breach and causation are undisputed and are a matter of common knowledge and experience" (quotation omitted)). As the district court persuasively reasoned:

> It is not a matter of common knowledge and experience that a person with a drug addiction, who is confused and medicated, will likely abuse any digestible product left out unattended. In order to reasonably arrive at this conclusion a jury would need expert testimony on: 1) the nature and effects of drug addiction both generally and as specifically applied to the decedent's case; 2) typical behavior associated with drug addiction; medications and treatments used within Cedar Ridge to address drug addiction both generally and as applied to decedent; 3) the effect that those medications would have on a drug addicted person's behavior; and 4) the standards for the same or similar facilities when caring for these residents during recovery.

10

The interplay between Carpenter's allegations, Meridian's duty to Carpenter's son, and the potential for a resident of a treatment facility for substance abuse and mental-health concerns to ingest harmful substances is complex. We agree with the district court that, unlike *Tousignant*, the average layperson would not be adequately equipped to assess the disputed elements of duty and breach without the guidance of expert testimony.[2]

Our decision in *Kanter* further supports our conclusion that this is not the rare case in which expert testimony is unnecessary. *Kanter* involved a medical-malpractice claim based on an employee's decision to leave a psychiatric patient unsupervised in the bathtub for a few minutes, during which time the patient drowned. 384 N.W.2d at 915-16. We reasoned that the jury would be aided by expert testimony because "the potential tendencies of patients suffering from mental illness are not so easily determined by one without special training and knowledge." *Id.* at 916. And we cautioned that "[j]ury guesswork is to be

---

[2] The district court further determined that causation is disputed and that "[e]xpert medical testimony is necessary for a lay juror to know and understand how one could die of ingestion of ammonium chloride given the discrepancy in the Death Certificate wherein it states the manner and cause of death are unknown and lists fentanyl and obesity as contributing factors." Carpenter argues that the district court erred in relying on rebuttal evidence—the death certificate—in determining that Carpenter failed to establish the prima facie element of causation. *See Demgen v. Fairview Hosp.*, 621 N.W.2d 259, 266-67 (Minn. App. 2001) (holding that the district court erred in relying on rebuttal evidence in determining that appellants' expert affidavit failed to meet the requirements of Minn. Stat. § 145.682, subd. 4(a) (2000)), *rev. denied* (Minn. Apr. 17, 2001). Because we conclude that expert medical testimony on the elements of duty and breach is necessary to establish a prima facie case against Meridian, we do not need to reach Carpenter's causation argument. *See Sorenson*, 457 N.W.2d at 191 ("In order to prove medical negligence, a plaintiff usually must offer expert testimony with respect to the standard of care and establish that the defendant doctor departed from that standard.").

discouraged if the use of expert testimony can assist the jury in determining these essential facts." *Id.*

Although section 145.682 was not in effect when *Kanter* was decided, *Kanter* is instructive on whether expert testimony is needed to establish the duty of care owed to residents receiving treatment at an in-patient treatment facility. As in *Kanter*, without expert testimony, the jury in this case would have to speculate about the appropriate levels of monitoring and security Meridian was obligated to provide Carpenter's son as a resident receiving treatment at Cedar Ridge. *See id.*

We therefore conclude that Carpenter brought a medical-malpractice claim requiring expert testimony to establish a prima facie case. Because Carpenter failed to timely produce an affidavit of expert review within 60 days of Meridian's demand as required by section 145.682, the district court did not abuse its discretion by dismissing Carpenter's claim.

## II.     Meridian provided a sufficient demand for an affidavit of expert review.

Carpenter argues that Meridian failed to provide adequate notice of its demand for strict compliance with section 145.682. The statute does not require that a defendant's demand for an affidavit of expert review be made in any particular manner. *See* Minn. Stat. § 145.682, subd. 6(a). "A 'demand' under section 145.682 need not be formal or explicit. It may be implicit and may appear in litigation documents—such as interrogatories or motion papers—so long as it 'provide[s] adequate notice that an affidavit of expert review is required[.]'" *Judah v. Ovsak*, 550 F. Supp. 3d 687, 707 (D. Minn. 2021) (quoting *Brown-Wilbert, Inc. v. Copeland Buhl & Co., P.L.L.P.*, 732 N.W.2d 209, 215

(Minn. 2007)). Meridian's answer stated that Carpenter had "failed to comply with Minnesota Statute § 145.682" and demanded "strict compliance with this statute." This language is more than sufficient to put Carpenter on notice of Meridian's demand for an affidavit of expert review. Further, Meridian provided Carpenter with additional notice in its joint discovery plan, which described this matter as a medical-malpractice case for which expert testimony is required, and stated that "expert discovery shall be governed by Minn. Stat. § 145.682." Given this record, we conclude that Meridian made a sufficient demand to trigger Carpenter's obligation to provide an affidavit of expert review.

## III. Carpenter's remaining arguments are unavailing.

Carpenter argues that the district court abused its discretion by granting Meridian's motion to dismiss for failure to comply with section 145.682 for several additional reasons, none of which we find persuasive.

First, Carpenter argues that the district court abused its discretion in dismissing her claim with prejudice because dismissals on procedural grounds are disfavored and because Carpenter should not be punished for her attorney's failure to provide a timely affidavit of expert review. But the plain language of section 145.682 requires a district court to dismiss with prejudice any claims that fail to meet the expert-affidavit requirements contained in the statute. Minn. Stat. § 145.682, subd. 6(a) (stating that failure to timely produce an affidavit of expert review "results, upon motion, in mandatory dismissal with prejudice"). "The requirements of Minn. Stat. § 145.682 are uncomplicated and unambiguous" and plaintiffs must strictly comply with the statute. *Lindberg v. Health Partners, Inc.*, 599 N.W.2d 572, 577 (Minn. 1999); *see Broehm*, 690 N.W.2d at 726 ("[W]e have stressed that

13

plaintiffs must adhere to strict compliance with the requirements of Minn. Stat. § 145.682."). Because Carpenter failed to timely produce an affidavit of expert review, the district court did not abuse its discretion by applying the plain language of the statute and dismissing Carpenter's claim with prejudice.

Second, Carpenter argues that the good-cause exception in subdivision 4(b) applies. *See* Minn. Stat. § 145.682, subd. 4(b) (providing that "[t]he parties or the court for good cause shown, *may by agreement*, provide for extensions of the time limits specified in subdivision 2, 3, or this subdivision" (emphasis added)). We disagree. The parties did not agree to extend the time limits for Carpenter's filing of an affidavit of expert review and the good-cause exception is inapplicable here.

Third, Carpenter attempts to invoke the safe-harbor clause in subdivision 6(c)(3). *See* Minn. Stat. § 145.682, subd. 6(c)(3) (providing that failure to comply with the affidavit requirement listed in subdivision 4 will not result in mandatory dismissal with prejudice so long as "before the hearing on the motion, the plaintiff [serves] upon the defendant an amended affidavit or answers to interrogatories that correct the claimed deficiencies"). The safe-harbor clause, however, applies only to affidavits identifying experts to be called under subdivision 4, and this case deals with affidavits of expert review under subdivision 3. *Id.* Because "[w]e may not add words to a statute that the Legislature has not supplied," we reject Carpenter's request to expand the safe-harbor clause to affidavits of expert review. *Johnson v. Cook County*, 786 N.W.2d 291, 295 (Minn. 2010).

**Affirmed.**

14